[PHILADELPHIA, FEBRUARY 18th, 1837.]

## KENNEDY *against* CARPENTER and Others.

### IN ERROR.

1. The payee and endorser of a promissory note, who endorsed it for the accommodation of the maker, and without any consideration between them, and who afterwards was compelled to pay the amount to the holder, cannot recover from the maker on any of the money counts in *indebitatus assumpsit,* but must sue on the note: And if more than six years have elapsed between the time at which the note fell due and the commencement of the action, he cannot recover, although he may have paid the amount to the holder within six years.

2. If one of two joint payees and endorsers of a note, discounted for the accommodation of the maker, die before the note falls due, his representatives are not liable to the holder for any part of the amount.

3. Where a note was made by the defendant in favour of A. and B., and jointly endorsed by them for the accommodation of the defendant, and the proceeds of the note, which was discounted by a bank, went to the credit of the defendant; and A. died before the note became due, and his administrators paid one-half of the amount to the bank, B. paying the other half, it was *held,* that the administrators could not recover the amount so paid by them; the payment having been voluntary, and in their own wrong.

THIS was a writ of error to the District Court for the City and

County of Philadelphia, to remove the record of an action of assumpsit brought in that court to June Term, 1832, by Ann Carpenter, John Smith and George Knorr, administrators of the goods, &c. of Conrad Carpenter, deceased, against Robert Kennedy.

The declaration contained five counts : The first was on a promissory note made by the defendant, dated the 6th of June, 1823, for $3500, payable to Conrad Carpenter and William Overington, at ninety days, at the Bank of Germantown, and endorsed, (as alleged,) by Overington to Carpenter ; laying a promise to the testator.   The 2d count was for money had and received, (viz. $5000,) on the 8th of September, 1823, by the defendant, to the use of the *intestate ;* and promise to the intestate.   The 3d count was for the same sum, had and received on the 14th of February, 1828, by the defendant, to the use of the *plaintiffs ;* and promise to them.  The 4th count was for the same sum lent and advanced, &c. on the 14th of February, 1828, by the *plaintiffs,* to the use of the defendant; and promise to the plaintiffs.   The 5th count was for the same sum lent and advanced, &c. on the 8th of September, 1823, by the *intestate,* to the use of the defendant ; and promise to the *intestate.*

The defendant pleaded *non assumpsit* and payment with leave, &c.; *non assumpsit infra sex annos; actio non accrevit infra sex annos ;* and set-off; and issues being joined on these pleas, the case came on for trial on the 7th of October, 1835, before Judge JONES ; when the plaintiff having proved the handwriting of the defendant to the note, gave it in evidence, as follows : · .

" $3500                          Philadelphia, June 6th, 1823

Ninety days after date, I promise to pay to Conrad Carpenter and William Overington, or order, at the Bank of Germantown, thirty-five hundred dollars, without defalcation, for value received.

ROBERT KENNEDY.

Credit the drawer,
   CONRAD CARPENTER."
      Endorsed,
         WILLIAM OVERINGTON,
         CONRAD CARPENTER.

The plaintiff then proved that the note was·drawn and endorsed for the accommodation of Kennedy, and discounted at the Bank of Germantown. .It was several times renewed; the last renewal being on the 6th of June, 1823, for ninety days.   The note became ,due on the 4th of September.   Carpenter the intestate died on the 24th of August, 1823 ; consequently before the note fell due.   It remained in the hands of the bank unpaid until February, 1828.   On the 13th of that month, Knorr, one of the plaintiffs,

paid one-half of the amount due upon it, and on the 18th, Overington paid the other half. The receipt given by the cashier of the bank to Knorr was as follows:—" Received of George Knorr, acting administrator to the estate of Conrad Carpenter, deceased, $2212 16, in full of one-half of the principal and interest on a note of Robert Kennedy for $3500, endorsed by Conrad Carpenter and William Overington, and discounted in the Germantown Bank, and regularly protested on the 7th of September, 1828, which the said Robert Kennedy has failed to pay, and which is in full against the estate of Conrad Carpenter, deceased, as a surety."

The learned Judge, after stating the evidence to the jury, expressed himself in substance as follows:—

" This action was commenced the 23rd of May, 1832. One of the points made in this case depends upon the act of limitations. In deciding this point, it is important to keep in view the character of the transaction between these parties. The note was for the accommodation of the drawer, as it appears by the evidence. The endorsers were in effect sureties; and as between them and the drawer, they have the rights of other sureties. They might, it is true, have paid the note as soon as it became due, but as between the parties, it was the duty of the drawer to have paid it. And it was the breach of this duty on his part, that continued the liability of the endorsers after the time of payment had elapsed. This action is founded on an implied promise, on the part of the drawer, to pay his endorsers what they should be ultimately obliged to pay for him; and the action is maintainable on this ground. The endorsers could not sue the defendant for not paying the note, as he was bound to do, without having first paid it themselves. Their cause of action therefore against him did not accrue until they paid the note, which was not till February 1828. If the jury believe the evidence, then this is within six years of suit brought. Another point raised by the defendant, relates to the form of the action. It is said that Mr. Knorr alone could bring this suit, and that he must sue in his personal, not representative character. I think that under the circumstances in evidence, the action may be maintained by the plaintiffs in their representative character. It would be impossible for the plaintiffs to show the ground or reason of this payment by them to the Germantown Bank, without showing the contract of their intestate. It is not like the case of the sale of goods which came to the hands of an administrator, where possession by him is evidence enough of his title to sell them and recover the price. Connected with this point is another position, viz: that the plaintiffs must, if they can sue at all, sue on the note. I think otherwise; the action may be brought upon the implied promise by the defendant to re-pay so much money as Carpenter or his estate should be obliged to pay. It is also contended that no action can be brought by the

plaintiffs jointly, unless the payment for which they seek to recover was made out of a joint fund. This proposition is involved in the answer to the preceding. The fund from which the note was paid is not a material inquiry in this case. The receipt taken by Mr. Knorr from the Germantown Bank (if believed), shows the character in which he claimed to act; and there is evidence to the same effect. He went to the bank, and in the character of administrator discharged a liability of his intestate. He had a right to say that he would act in that character and not personally. A party paying money, has the right not only to direct the application of it, but also to say in what character he pays it. His paying it in the character of administrator, repudiates the idea that he was the purchaser of the note for his own purposes. It is also contended in this case, that there is no evidence of the payment of money. It is said that to maintain an action for money paid, laid out and expended, there must be proof of the payment of money; and payment by a check upon a fund deposited in bank is not sufficient. I am of opinion that a payment by a check upon a bank is evidence of a payment in money, to sustain an action for money paid. These remarks embrace all matters of law which have been discussed."

The jury found for the plaintiffs, and the defendant took a writ of error, and assigned several errors in respect to the admission of testimony on the trial; which as they were only slightly pressed on the argument, and were not noticed in the opinion of the court, are omitted. The errors relied upon were principally in the charge of the court.

Mr. *Kennedy* and Mr. *Rawle* for the plaintiff in error, cited 1 *Chitty's Plead.* 234; 5 *East,* 150; 2 *Bos. & Pul.* 424; 4 *Hur. & Johns.* 530; 13 *Serg. & Rawle,* 442; 3 *Bos. & Pul.* 10; 4 *Yeates,* 105; 2 *Rawle,* 191; 5 *Rawle,* 137; 1 *Penn. Rep.* 161; 2 *Penn. Rep.* 490; 3 *Rawle,* 370; 10 *Serg. & Rawle,* 234; 16 *Serg. & Rawle,* 242; 13 *Serg. & Rawle,* 443; 1 *Penn. Rep.* 137; *Chitty on Bills,* 571; 2 *Penn. Rep.* 25; 3 *Rawle,* 388; 1 *Watts,* 408; 2 *Bay,* 324; 16 *Mass. Rep.* 314; 2 *Term Rep.* 105; 7 *Term Rep.* 568; 7 *Serg. & Rawle,* 126; 3 *Penn. Rep.* 380; 12 *Serg. & Rawle,* 262; 5 *Binn.* 573; *Chitty on Contracts,* 179; 2 *Rawle,* 311; 6 *Serg. & Rawle,* 262; 10 *Serg. & Rawle,* 313; 2 *Tidd's Practice,* 802; 2 *Williams's Saunders,* 117, note, c. d; 8 *Serg. & Rawle,* 402.

Mr. *Miles,* contra, cited 4 *Term. Rep.* 277; 3 *Term Rep.* 659; 3 *East,* 104; 10 *Serg. & Rawle,* 234; 1 *Penn. Rep.* 161; 2 *Rawle,* 102; 1 *Chitty's Plead.* 207; 2 *Bos. & Pul.* 424; 2 *Lev.* 110; 2 *Vin. Abr.* 47, pl. *b.*; *Com. Dig.* Action, G.; 3 *Serg. & Rawle,* 413; 8 *Serg. & Rawle,* 265; 2 *Rawle,* 212; 1 *Watts,* 344; 17 *Serg. & Rawle,* 116, 250; 16 *Serg. & Rawle,* 350; 5 *Rawle,* 124; 2 *Rawle,*

280; 3 *Starkie's Evid.* 1385; 3 *Bos. & Pul.* 235; 2 *Harris & Gill,* 305.

The opinion of the Court was delivered by

KENNEDY, J.—Out of the numerous errors assigned, two principal objections seem to arise against the recovery of the plaintiffs below, either of which we think is fatal. The first is, that they are not entitled to recover on the money counts in their declaration; because if they, as the administrators of Conrad Carpenter, deceased, were bound to pay the money to the Bank of Germantown, as they did, in discharge of the note, their only remedy to be reimbursed, was by a suit upon the note itself, in the name of William Overington, the surviving payee: but then six years and more, having elapsed after the note became payable, before this suit was commenced, the statute of limitations, which has been pleaded here, would have been a bar to such action, had it been brought at the time this was. The second is, that the plaintiff's intestate being a joint payee in the note with William Overington; and having endorsed it *jointly* with him to the bank, purely for the accommodation of the maker, without receiving any benefit therefrom, and dying thereafter before it fell due, or any thing was paid on it, William Overington surviving, the intestate's estate, as well as himself, became thereby released, both in equity and at law, from the payment of it.

Now as to the first objection. It is not intended to be denied, that a promissory note, for the payment of money, may be given in evidence on the money counts, in a suit between the payee and the maker: for before the passage of the statute of 3 and 4 Ann. Lord HOLT, in *Carter* v. *Palmer*, observes; "we will take such a note *prima facie*, for evidence of money lent;" and in *Clarke* v. *Martin*, (2 *Ld. Raym.* 758,) he repeats, as a reason for his decided disapprobation of declaring upon such notes, as if they were within the custom of merchants, "because there was so easy a method, as to declare upon a general *indebitatus assumpsit* for money lent," &c. And in *Grant* v. *Vaughan*, (3 *Burr.* 1525,) Lord MANSFIELD says, "I do not find it any where disputed, that an action upon an *indebitatus assumpsit* generally for money lent, might be brought on a note payable to one or order." So in *Story* v. *Atkins*, (2 *Stran.* 719,) Chief Justice RAYMOND, in delivering the opinion of the court, says, "it undoubtedly may be given in evidence on an *indebitatus assumpsit*, as a paper or writing to prove the defendant's receipt of so much money from the plaintiff;" for which he cites *Hard's case*, (1 *Salk.* 23,) where it is said, debt would lie by the payee of a bill of exchange against the drawer, because it was evidence of the receipt of so much money received by the drawer of the payee. He also states another thing which goes to show that the remedy on the

(Kennedy v. Carpenter.)

note is grounded exclusively on the statute, but that on the money counts, is given by the common law, when he says that " the statute 3 and 4 Ann. only gives an additional remedy upon promissory notes, but does not take away the old one." And accordingly in the case of *Ex parte Mills*, (2 *Ves. jr.* 303,) Lord LOUGHBOROUGH, where the note was given for money lent, held that the payee need not declare on the note, but might recover on a count for money lent. See also *Bul. N. P.* 137, to the same effect.

But this principle, I apprehend, is only applicable when there is privity of contract between the plaintiff and defendant, and a money consideration has passed between them, of which the note, being for money, is *prima facie* evidence: for instance, as between the payee and the maker, or between the endorsee and his immediate endorser, but not as between the endorsee and the maker, or the endorsee and a remote endorser. See *Smith* v. *Kendall*, (6 *Term Rep.* 123.) *Johnson* v. *Collings*, (1 *East*, 98.) *Barlow* v. *Bishop*, (*Id.* 434.) *Whitehill* v. *Bennitt*, (3 *Bos. & Pull.* 559.) *Houle* v. *Baxter*, (3 *East*, 177.) *Waynam* v. *Bend*, (1 *Campb.* 175.) *Bently* v. *Northouse*, (*Mood. & Mal.* 66 ;) *Chitty on Bills*, 594, (8th ed.) There are, however, cases in which the right of the plaintiff to recover on the money counts has been extended to the holder, between whom and the defendant, there was no privity of contract. In *Cruger* v. *Armstrong*, (3 *Johns. Ca.* 5,) the Supreme Court of New York seem to have thought that the plaintiff having become the holder of a check, payable to W. and J. C. or bearer; which he received, not from the defendant, but from a third person, had a right to give it in evidence on the money counts. So also in *Pierce* v. *Crofts*, (12 *Johns.* 90,) it was held that the holder of a bill payable to A. B. or bearer, might either, as the bearer or the endorsee thereof, recover on a count for money had and received. Mr. Justice PLATT, in delivering the opinion of the court, after reciting the words of their statute, which are substantially, in this respect, the same with those of 3 and 4 Ann. declaring that notes payable to order or bearer shall be taken and construed to be due and payable as therein expressed, and shall have the same effect, and be negotiable in like manner, as inland bills of exchange, says, "the effect of the statute was twofold; first, to make a promissory note evidence *per se*, of money due, so that it might be declared on like a specialty; and secondly, to make it negotiable." Then he observes, "if, as all agree, such a note before the statute, was evidence of money due from the *maker* to the *payee*, so as to support a count for money had and received, I can see no good reason why an assignee by endorsement or delivery, ought not to have the same remedy. It was the object of the statute, to place the *assignee* in the same relation to the *maker* as the *payee* stood in before; and the legal operation of the transfer is, that the money, which, by virtue of the note, was due to the *payee* from the *maker*, is now due from the *maker* to the *assignee*." But

may it not be well questioned, whether this conclusion is warranted either by the terms of the statute, or by the practice and decisions that have obtained under it? For it is the note, or in other words, the identical promise contained on the face of it, which is an express promise for the payment of money, that is made assignable by the statute. There is certainly nothing in the terms of the statute which goes to show that it was the intention of the legislature to make an *implied* promise growing out of the consideration of the note, or the transaction which gave being to it, or any other promise, either express or implied, assignable, than that contained in the note itself. Suppose for instance, the note to have been given for the price of goods sold and delivered by the payee to the maker; as between them, if the note be not paid at maturity, the payee still holding it, may recover the money on a count for goods sold and delivered; but surely it will not be pretended, and certainly never was heard of, that the assignee of the note in such case, could recover upon such a count, by virtue of the assignment of the note under the operation of the statute. But suppose the note were given for money actually lent by the payee to the maker, if the assignee in the case of the note given for goods sold and delivered, cannot recover upon a count for the sale of the goods, why shall the assignee of the note in the latter case, be entitled to recover on a count for money lent? The statute in its terms, does not embrace the one case more than the other: and though the statute does embrace and make the note itself assignable in either case, it does not appear that it was the design of the legislature to include the cause of action forming the consideration of it, so as to pass it too. It is clear, therefore, that the object of the statute could not have been as Mr. Justice PLATT says, to place the assignee of the note in every respect, in the same relation to the maker, as the payee stood in before; but merely so far as might be necessary to enable him to recover upon the express promise contained in the note itself, and not to go behind it upon an undertaking existing independently of it, whether it be expressed or implied. This being the case, I take it, that the assignee or endorsee of a note made assignable by the statute, must declare upon the note itself, and in doing so, he must invoke the aid of the statute to entitle him to recover of the maker, as it is only by force thereof, that he can claim to recover at all, in his own name.

The Supreme Court of the United States held also, in *Raborg* v. *Peyton*, (2 *Wheat.* 385,) that debt might be maintained by the endorsee, against the acceptor of a bill of exchange, it being expressed to be for value received; and would seem to have adopted the same notion entertained by the Supreme Court of New York, on this subject, in *Pierce* v. *Crofts;* for Mr. Justice STORY, who delivered the opinion of the court, after showing that debt, in such case might have been supported by the payee of the bill, had he retained it, says,

(Kennedy v. Carpenter.)

" but in point of law, every *subsequent holder*, in respect to the *acceptor* of a bill, and the *maker* of a note, *stands in the same predicament as the payee.* An acceptance is as much evidence of money had and received by the acceptor to the use of such holder, and of money paid by such holder for the use of the acceptor, as if he were the payee;" for which he cites *Tatlock* v. *Harris*, (3 *Term Rep.* 172.) *Vere* v. *Lewis*, (*Id.* 184,) and *Grant* v. *Vaughan*, (3 *Burr.* 1516.) This decision of the Supreme Court of the United States appears to be contrary to the current of the English authorities. The engagement of the acceptor, though clearly a promise to pay the bill, is but collateral, because the drawer, who created the debt first with the payee, still remains bound for the payment of it, notwithstanding the acceptance of the bill by the drawee; and therefore it is, that the undertaking of the acceptor has been considered collateral, which has ever been held insufficient to maintain an action of debt. *Cogan* v. *Greene*, (1 *Roll. Abr.* 594, (F.) pl. 2.) And accordingly it has been ruled, that debt will not lie even in favour of the payee, and much less an endorsee, I take it, where there is no privity of contract, against the acceptor of a bill of exchange. *Anonymous*, (*Hardr.* 485,) said by Justice RAINSFORD, to be *Milton's case*, (1 *Mod.* 286.) *Browne* v. *London*, (1 *Mod.* 285 ; S. C. 1 *Ventr.* 152; 1 *Freem.* 14.) *Hard's case*, (1 *Salk.* 23.) *Young* v. *Bishop*, (2 *Bos. & Pull.* 82, 3.) *Webb* v. *Geddes*, (1 *Taunt.* 540.) *Thompson* v. *Morgan*, (3 *Campb.* 101.) *Com. Dig.* tit. *Debt*, [B.]

So far, however, as regards the remedy given by law to the payee upon the bill or note itself, against the acceptor or maker, the endorsee, doubtless, as Mr. Justice STORY says, "stands in the same predicament as the payee," but certainly his right was not intended to go further. For to hold that either debt or assumpsit may be maintained by the endorsee for money had and received to his use by the acceptor, or for money paid by the former for the use of the latter, would be giving him the benefit of a cause of action not made assignable, as has been shown above by the custom of merchants, or the statute ; and would therefore go to impugn the rule of law, that a chose in action is not assignable. Indeed it must be admitted by all, I think, that no assignment or transfer made of a right, consisting of a mere chose in action, whether it be for money or other thing, without it be a bill of exchange, note or other instrument, made negotiable by the law-merchant or the statute, will enable the assignee to maintain a suit for or on account of it, in his own name. It is therefore manifest, that the endorsee can have no right of action vested in him, save that founded on the bill or note. Since his right of action then arises out of the bill or note and the assignment thereof, under the operation of the custom of merchants and the statute, and not out of the transaction which formed the consideration of the bill or note; and seeing the law has provided a specific and adequate remedy in his favour, on the bill or note itself for the recovery of

(Kennedy *v.* Carpenter.)

the amount thereof, it seems but reasonable that he should be confined to it. Besides, it is difficult to conceive how the endorsee can be permitted to go behind the bill or note, as it were, and be placed on the same ground on which the payee stood, without his having been privy thereto. The acceptance of the bill may, fairly enough, be regarded as evidence of an admission by the acceptor, of his having received money for the use of the payee ; and upon a count for money had and received, in an action by the payee against him, may be admitted in evidence, to support it, there being privity of contract between them. So the giving of a note for the payment of money, may be considered *prima facie* evidence of money lent by the payee to the maker, or money had and received by the latter for the use of the former ; and therefore, in a suit between them, may be given in evidence, upon a count for money lent or money had and received. But even between the original parties to the bill or note, if it be shown that the consideration given for it, was not money, but some other thing of value, no recovery can be had upon the money counts, though on a count upon the bill or note there may ; which shows plainly that the bill or note and the consideration, upon which it was founded, are not regarded as the same for all purposes, and that a transfer of the first would be no transfer of the latter, without the custom or the statute authorised it, which has never been thought to be the case. In one respect, however, an endorsee for a valuable consideration, given *bona fide*, stands on a more favourable footing in regard to his right to recover on the bill or note, than the payee, who has given no consideration for it. The latter cannot recover on it, whereas the former may. Whether it was given for a good consideration or not, is a matter the endorsee is not bound to inquire into, or to know any thing about; he is considered a stranger to the transaction upon which it was founded, and in no wise privy to it : he has no occasion to look further than the face of the bill or note, which contains a promise or undertaking to pay a certain sum of money, and therefore, by the law-merchant or the statute, is made assignable ; and it is that alone, that he bargains for and has assigned to him. Hence it follows as a necessary consequence that the right of the endorsee to recover the amount of the bill or note, is founded upon the bill or note itself; and if he be not entitled to recover upon it, he cannot recover without ; nor upon any other consideration or cause of action, however closely it may be connected with it.

The cases of *Tatlock* v. *Harris* and *Vere* v. *Lewis*, cited by Mr. Justice Story in support of the principle, that the endorsee of a bill may maintain *indebitatus assumpsit* for money had and received for his use, or money paid by him for the use of the acceptor, against the latter, would seem to have been decided on the authority of *Grant* v. *Vaughan*, (3 *Burr.* 1516,) which is also cited by him; in which, according to a manuscript report thereof, read by Lord

(Kennedy v. Carpenter.)

KENYON, Justice YATES in delivering his opinion, said, " giving such bill is, as it were, an assignment of so much property, which becomes money had and received to the use of the holder of the bill." Lord KENYON, after reading this clause of Justice YATES's opinion in pronouncing the opinion of the court in *Tatlock* v. *Harris*, observes, " now on that doctrine my opinion is grounded in the decision of this case." This view of the matter may be ingenious, but still it does not seem to meet, nor yet to satisfy the common understanding, which every one must have of the transaction, when examined and judged of according to the general, if not universal sense of mankind. The bill or note is looked upon by every one as an engagement simply, on the part of the acceptor or maker, to pay a certain sum of money to the payee or his order, and as binding upon him to do so by force of the law-merchant or the statute, without any consideration being expressed upon the face of the bill or note : and so it is regarded in law ; for if not paid at maturity, it may be sued and declared on as a speciality. It is the promise contained on the face of the bill or note, and the obligation growing out of the same, that are made assignable by the custom of merchants or the statute, and not property as money, nor yet money as property ; or in other words, it is a mere right or chose in action, founded on the bill or note exclusively, that is made assignable ; so that, as I have before said, if the assignee cannot recover on a declaration drawn upon the bill or note, he can have no other cause of action by virtue of the assignment, that will enable him to maintain an action in his own name against the drawer, acceptor or maker. And as the endorsee of a note is only enabled by force of the statute, and not by any principle of the common law, to recover the amount thereof in a suit brought by him in his own name, it is necessary, as I conceive, that he should set every thing out in his declaration requisite to show, that he has a good right or title under the statute to maintain his action. And if he only sets forth such cause of action as would entitle him to recover, according to the principles of the common law, he cannot give in evidence to support it, a cause of action which he has no right to maintain, except by force of the statute. This is evidenced to be the law by all the precedents and forms of declarations applicable to such case ; as also, in the case of bail-bonds, when assigned by the sheriff. In this latter case, the plaintiff must show by his declaration, that the sheriff assigned the bond to him *according to the form of the statute.* *Daures* v. *Papworth,* (*Willes' Rep.* 403.) *Lease* v. *Box,* (1 *Wils.* 121.) *Mifflin* v. *Peters,* (2 *Ld. Raym.* 1564.) 2 *Saund.* 61, *note :* and this much, at least, seems to be required according to the rule laid down in *Birch* v. *Bellamy,* (12 *Mod.* 540,) which is, that " if a thing be made good *originally* by act of parliament, then you must *plead all the circumstances* of the act." See also to this effect, *Anonymous,* (2 *Salk.* 519.) 6 *Bac. Abr.* (by *Wilson,*) 395, *tit. statute,* (L. 3.)

So in the case of a suit brought to recover a penalty, imposed for the commission of an offence created by statute, every thing must be shown in the information necessary to make it an offence within the statute; and the conclusion of *contra formam statuti* will not aid any deficiency in this respect. *Holden qui tam* v. *Weedan*, (*Bunb.* 177.) *Bradley* v. *Long*, (*Id.* 120.) *Rook's case*, (*Hardr.* 20.) 2 *Hawk. P. C. book* 2, *ch.* 25, *sec.* 110. The tendency of these cases and authorities, and of the principles established by them, is to show still further, and indeed conclusively, as it appears to me, that the endorsee of a negotiable note has no remedy for the recovery of the amount thereof against the maker, except in a suit founded upon the note itself; wherein he must show his title to recover, by setting out in his declaration the making of the note by the drawer, the tenor of it, the endorsement by the payee transferring it to him, &c. so as to bring his claim distinctly within the provisions of the statute, and thus show that, by force of it, he is entitled to recover.

The Supreme Court of Massachusetts, in *Wild* v. *Fisher*, (4 *Pick.* 421,) seems to have followed the decision of the Supreme Court of New York in *Pierce* v. *Crafts*, without any particular examination of the question upon principle, but rather, as I presume, decided it upon the authorities which happened to be adduced, and have a leaning that way. Accordingly it was held, in an action by the endorsee of a promissory note against the maker, that the plaintiff might give the note in evidence under the common money counts. The King's Bench also, in England, in *Pownal* v. *Ferrand*, (6 *Barn. & Cress.* 439,) a case decided some ten years ago, held that the endorsee of a bill of exchange after having passed it away by endorsing it himself, and being compelled by suit as the endorser thereof, to pay a part of it, the residue having been recovered, by judgment and execution, of the acceptor, might recover from the acceptor such part as he had paid, in an action for money paid to his use. But it may be doub.ed, whether some of the Judges, at least, did not consider this case as taken out of what, I consider, the general rule on this subject, by the pecularity of the circumstances attending it. For the language of Lord Tenterdon, Chief Justice, is, " The facts of this case are so very peculiar that it appears to me, that a decision in favour of the plaintiff will not tend to any mischievous consequences." And Justice Littledale says, " The authorities cited induced me for some time to entertain considerable doubt, whether the plaintiff as endorser could recover in this form." We have also a case of our own, which seems to have been decided in the same way. I mean *Myers* v. *Irwin*, (2 *Serg. & Rawle*, 368.) The plaintiff being the holder of a note, as endorsee, drawn by the defendant, endorsed it to an association, called "The Farmers' Bank of Lancaster." The note, when due, was protested for non-payment, and paid and taken up by the plaintiff, who recovered against the defendant upon a count for

(Kennedy v. Carpenter.)

money paid to the use of the latter.    The question, however, whether the count was such as the plaintiff had a right to recover on, does not appear to have been made.    The only objection made to the note being given in evidence, seems to have been, that it was discounted, as the defendant alleged, at the Farmers' Bank of Lancaster, contrary to and in violation of the acts of assembly, which rendered such notes irrecoverable, if discounted by banking associations without charter.

The discussion of this particular point, perhaps might have been avoided, but as it may be thought to have some bearing on the question which is presented here, I have therefore thought proper to notice it.    Here the plaintiffs are the representatives of one of two joint payees named in the note, and had their intestate been sole payee, it would have been difficult, perhaps, for them to have maintained their claim under the money counts, for the note would only have been *prima facie* or presumptive evidence, according to Lord HOLT, and all the authorities, of money lent by the intestate to the defendant; but that presumption would have been completely repelled, had the same evidence been given, and admissions made by the parties that have been here, for they show that neither money nor any thing else passed from the intestate to the defendant, at the time or before the making of the note, but that it was made by the defendant to the intestate, for the purpose of obtaining the credit of his name as endorser thereon, to enable the defendant to borrow the amount of the note by means thereof from the Bank of Germantown. This being the purpose for which the note was concocted, it is clear that it imposed no obligation upon the defendant, until the money was advanced upon it by the bank.    The money advanced upon the note by the bank, was not the money of the intestate; nor was it advanced by the bank to him, so that it might become his, and he again lend it to the defendant; but it was loaned directly to the defendant by the bank, upon the security of the note and the endorsement thereon.    It would therefore seem to be straining the matter too far, to consider it money loaned by the intestate to the defendant. But besides, it was not money loaned or advanced previously and the note made and given subsequently; but the note was made and delivered first to the bank, and the bank afterwards advanced the money to the defendant upon the security of the note, and the endorsement thereon alone, which renders it difficult if not impossible to raise or prove any promise for the repayment of the money, other than those contained in the note and the endorsement thereon; so that there is really nothing to support the count for money lent in the declaration, and still less, if possible, to sustain the counts for money had and received.    But suppose it were otherwise, and that the money advanced by the bank might fairly be considered as the money of the intestate, still the statute of limitations would be a bar

(Kennedy v. Carpenter.)

to the recovery of it; and this, indeed, would seem to be conceded by the counsel for the plaintiffs.

The main hope of the plaintiffs, however, appears to rest on the count for money paid, laid out and expended by them, as the administrators of the intestate, for the use of the defendant; under which they consider themselves entitled to recover the money which they paid to the bank in discharge of the note. And it is quite clear that if there be no other impediment, the statute of limitations cannot be interposed to prevent their recovery upon this count.

The intestate of the plaintiffs must certainly, as their counsel have contended, be regarded as standing on the footing of a surety for the defendant. But it must be recollected, that until Lord MANS-FIELD came on the bench, when the surety paid the debt of his principal, he had no remedy for being reimbursed at law, unless he had taken an express engagement of his principal for that purpose. Without this, his only remedy was in equity; but having taken a security to be indemnified which was good at law, he had no occasion to resort to equity, and indeed could not do so, seeing he had an adequate remedy at law. It has, however since that been established that a surety having paid the debt of his principal, may recover from him at law, upon an implied promise, where no express promise of indemnity has been given. But still the law will not supply such a promise when there is no occasion for it; as for instance, where a legal security has been taken by the surety of his principal. And accordingly in *Toussaint* v. *Martinnau*, (2 *Term Rep.* 100,) it was held that a surety, bound in a bond with his principal, upon which he was compelled to pay the money, having taken of his principal at the time he became his surety, a bond conditioned for the payment of the like sum of money to himself at an earlier day, than he as surety was bound to pay, could not maintain an action upon an implied assumpsit for money paid, laid out, &c. Mr. Justice BUL-LER in this case, page 105, asks, " Why does the law raise such a promise?" to which he answers " because there is *no security* given by the party. But if the party choose to take a security, there is no occasion for the law to raise a promise. Promises *in law* only exist where there is *no express* stipulation between the parties." Now let us see whether, according to this doctrine, the plaintiffs can claim the benefit of any implied promise to be reimbursed. Their intestate did not become the surety of the defendant or his co-obligor in a bond, or co-promiser in a note, but took a note of the defendant payable to himself and William Overington or their order, which they jointly endorsed to the bank, agreeing that it should be discounted for the benefit of the defendant. The instant therefore that the bank advanced to the defendant the amount of money mentioned in the note, he became bound by it to the bank, as the maker thereof, according to its tenor; and at the same time the intestate and Over-ington, by virtue of their endorsement, upon his failing to do so,

and their receiving due notice thereof, became likewise bound for the payment of it. Thus the relative rights and duties of the several parties become the same, so far as regarded the right to sustain an action upon the note itself in case of delinquency, as if the note had been given by the defendant to the payees for a valuable consideration received of the payees in the first instance, so that in case of their, or either of them having to pay the note to the bank after it fell due, they would thereby be entitled to recover on the note itself, the money so paid by them, and as the payees thereof, for this purpose, to sue the defendant upon it, according to the law-merchant, and the provisions of the statute. In *Death* v. *Serwonters*, (1 *Lutw.* 885, b.) it was adjudged that the second endorser of a bill of exchange after having paid and taken it up from the holder, upon the acceptor's failing to do so, was entitled to recover upon a count in the declaration alleging a custom, that if the second endorser paid the bill, after acceptance and neglect of the acceptor to do so at maturity to the endorsee or holder, then the acceptor became liable to the second endorser in an action against him on the bill for the amount thereof. And in like manner it was ruled in *Simmonds* v. *Parminter*, (1 *Wils.* 185,) that the drawer of a bill of exchange after having paid the amount thereof, upon failure of the acceptor to do it, was entitled to recover of the acceptor upon a count drawn on the bill, setting it out together with the facts, and alleging the liability of the defendant thereupon to pay the contents of the bill to the plaintiff, according to the usage and custom of merchants. According to the principle of these cases, it seems to be settled that every endorser of a bill or note, whether he be the drawer of the one or the payee of the other, or a subsequent endorser, has upon his paying it after maturity, when the acceptor or maker has neglected or refused to do so, a right to maintain his action upon the bill or note itself; and therefore has no occasion to invoke the aid of an implied promise, in order to obtain re-payment of the money paid by him in taking it up.

It must be admitted, however, that *Brooks* v. *Rogers*, (1 *Hen. Bla.* 640,) and *Howis* v. *Wiggins*, (4 *Term Rep.* 714,) seem to be in opposition to this doctrine. But the authority of these cases has been very strongly questioned, if not overturned. Of the first, Mr. Justice Lawrence, who was at the bar when it was decided, and argued it as one of the counsel for the plaintiff, in whose favour the decision was given, afterwards when on the bench in delivering his opinion in *Cowley* v. *Dunlop*, (7 *Term Rep.* 568-9,) doubts if the argument he used therein was not fallacious, showing very plainly too, that he doubted likewise the correctness of the decision. He also mentions the case of *Ex parte Seddon*, wherein he says, Lord Lough-borough, who was Chief Justice of the court at the time of deciding *Brooks* and *Rogers*, afterwards, when Lord Chancellor, changed his opinion and decided differently. And though he admits *Howis* and

(Kennedy *v.* Carpenter.)

*Wiggins* to be against the opinion he was then delivering, yet he shows clearly that he could not yield to its being correct. Mr. Justice GROSE, also in *Cowley* v. *Dunlop,* (p. 573,) who was one of the judges of the court when *Howis* and *Wiggins* was decided, in noticing it, and *Brooks* v. *Rogers* says, "the gentlemen in the court of Chancery conceive that those decisions are directly in opposition to their daily practice," and states also the fact of Lord LOUGHBOROUGH's having overruled, in the case of *Ex parte Seddon,* the decision which he gave in *Brooks* and *Rogers.* And as to *Howis* and *Wiggins,* he thought it possible that it was decided under a misapprehension, for he considered it at the time when decided, as a case of indemnity, falling within the principle of *Vanderheydon* v. *De Paiba,* (3 *Wils.* 528,) thus showing that upon further reflection, he considered the decision wrong. Lord ELLENBOROUGH also in *Buckler* v. *Buttivant,* (3 *East,* 82,) observes, " It is unnecessary to say any thing of those cases of *Brooks* v. *Rogers* and *Howis* v. *Wiggins,* though I have a decided opinion upon the subject. It is sufficient for the present to observe, that the noble lord by whom the former of these cases was determined, afterwards changed his opinion in the case of *Ex parte Seddon,* and the latter has since been doubted in this court by some of the judges in *Cowley* v. *Dunlop.*" Thus showing very *decidedly,* as I conceive, that the " decided opinion," which he entertained on the subject, was in direct opposition to them.

The reasoning also of Mr. Justice LAWRENCE in *Cowley* v. *Dunlop,* (page 568,) is directly applicable to the present case, and supports the view taken of it above. He says, " in short the question comes to this, whether the drawer of a bill of exchange, who is obliged to take it up, after having negotiated it, is not confined to his action on that bill, to recover it against the acceptor? And it seems to me, that he is; for I see no reason to raise an implied assumpsit, as for money paid by the drawer for the acceptor, when the contract arising out of the bill, and the custom, are fully sufficient to enable him to recover what he may be obliged to pay on the acceptor's refusal." Now all that is said here of the drawer of a bill, is equally applicable to the payee of a negotiable note, after he has passed it away by endorsement; for he stands precisely in the same relation to the maker of it, that the drawer of a bill of exchange does to the acceptor thereof. And though the intestate and Overington were in reality but sureties for the defendant, yet that can make no difference; for having, by their agreement, given to the *security,* upon which the money was advanced, such a *form* as to enable them to sue the defendant upon it, in case they or either of them, should have to pay the money to the bank upon his neglect or refusal, the law will not raise an assumpsit by implication to redress them, because there is no necessity for it. But it has been objected, that such a rule may operate very unjustly in some cases, by putting it in the power of the maker of the note, to protect himself against the payment of

it by the statute of limitations; as for instance, where the payee, after the note has been negociated, is unable to pay and take it up before the six years shall have elapsed after it became payable, and then becoming able, he is compelled to do so, under a judgment obtained against him, in a suit commenced before the six years had run out. Such a case may possibly occur, in which the application of this rule might prevent the party from obtaining redress; but still he may guard against it if he will, by taking an indemnity under seal; and if he chooses, he may require one, that will enable him to sue and obtain a judgment without his having paid the money.  But such risk of being defeated by the statute of limitations, is nothing more than every endorser of a bill or note has to encounter and run; for he may possibly be compelled to pay and take up the bill or note endorsed by him, after the statute of limitations shall have become a bar to his recovering upon the same, of those who otherwise would be liable to him.

Besides, I am not satisfied, but upon principles of expediency and sound commercial policy, it ought to be so.  For punctuality is the life of commerce, and it would be a powerful inducement to every one, who has come under such engagement, to have himself disengaged by some means, in the course of the six years, from the time the bill or note shall have become payable; which would seem to be a sufficient period, within which, the liability of every one concerned should be terminated, unless some legal proceeding shall have been commenced to keep it alive.  It would therefore be an unreasonable construction of the statute of limitations, to hold that every endorser, who is compelled to pay and take the note up, after being negotiated, shall have six years from the time of his paying it, to sue those upon it, who may be liable to him; for the effect of it might be, to render the maker liable to a suit upon his note, when there are a number of consecutive endorsers, twenty or more years after it had become payable.   And this, it is conceived, would be contrary to the spirit and meaning of the statute, as well as principles of good policy; which require that the peace and quiet of the community should not be disturbed by the investigation of disputes arising out of matters so stale, that it may be difficult, if not impossible, to ascertain the truth, and what ought to be done in order to administer justice between the parties litigant.

But upon any construction that can be given to the acts of 1713 and 1715, limiting the time within which suits shall be brought upon promissory notes, the claim of the plaintiffs in their first count, was clearly barred before the commencement of this action.   This count, however, does not seem to be warranted by the tenor of the note, the endorsement thereon, and the facts of the case; but still it does not appear, that the effect of the statute of limitations could have been avoided by any action that could have been instituted at the time this was.

(Kennedy *v.* Carpenter.)

We come now to the second objection. In the first count of the plaintiffs' declaration, it is alleged that Overington endorsed the note to Carpenter, who thereby became the sole owner of it. The fact, however, is clearly not so; nor can it be made out by any reasonable intendment; for they have both endorsed the note. It was endorsed in blank by them, for the purpose of transferring all their right and title to it, as payees, to the bank; thus giving the bank, where it was expected the note would be discounted, not only all their right and title as joint payees in it, but likewise the full benefit and security of their responsibility, as joint endorsers thereon. Carpenter and Overington being joint payees in the note, and not connected in any way as partners in trade, it is therefore clear, that their right to it, could only be transferred by their joint endorsement. " If a bill," says Mr. *Chitty* in his treatise on bills and notes, page 226, (8th ed.) " has been made or transferred to several persons *not* in *partnership*, the right of transfer is in all collectively, and not in any one individually." For which he refers to *Carvick* v. *Vickery*, (*Doug.* 553, note,); *Jones* v. *Radford*, (1 *Campb.* 83, note); which seem to sustain the proposition fully; though it may be doubted whether Lord ELLENBOROUGH had sufficient reason in the latter case, for avoiding the application of it there, if *Smith* v. *Hunter*, (1 *Term Rep.* 654,) is to be taken as authority. Carpenter and Overington having both endorsed their names on the note in blank, and it being thus delivered to the bank; the tenor of the note, the object of endorsing and transferring it, together with the common understanding and practice in this behalf, must lead and determine the character, nature and effect of the endorsement. The note then being in its terms, to pay jointly to Carpenter and Overington, and the object of their endorsing, being to transfer their right to it, as the joint payees thereof; and a joint endorsement being, if not the only, certainly the most appropriate mode of effecting this end, makes it proper that it should be considered and taken as such. But there is another objection of some weight, against considering the endorsement in the way the counsel for the plaintiffs would have it, that is, as an endorsement of the note, first by Overington to Carpenter, and then by Carpenter to the bank. The objection is this, that an endorsement in common form, by one of two payees in a negotiable note to the other, such as " pay the contents of this note to Jacob Carpenter therein named," would not have made him liable to pay the amount thereof, upon default of the maker. An endorsement in the usual form, will only have this effect, as I apprehend, when it operates upon, and transfers a right to the whole contents of the note; and not merely a part thereof, which is the most that the individual endorsement of one of two joint payees, not co-partners, can pass. If this be correct, and I am inclined to think it is, then the bank, according to the plaintiffs' mode of disposing of the endorsement, would have had no security at all from Overington, for the payment

of the note, upon the default of the defendant, which would certainly be contrary to what was intended. For notwithstanding the endorsement was in blank, I take it to be clear, that if it were to be considered as an endorsement made by Overington to Carpenter, no special engagement guarantying the payment of the note could be written and filled up over the name of Overington, so as to render him liable beyond the legal effect of an endorsement written in the common form. If a blank endorsement were to be considered as giving authority to the holder of the note to write over it any stipulation he pleased for the payment thereof, then the trouble and expense of making a demand 'upon the drawer on the day of payment, and giving to the endorser notice of the drawer's refusal to pay, in case he does so, might and doutbless would be dispensed with in every case of a blank endorsement, by writing over it, a special agreement of the endorser, waiving all claim to these things being done, and taking upon himself the duty of seeing that the note was punctually paid at maturity. Every day's practice, however, goes to show that this cannot be done, and in *Adis* v. *Johnson*, (1 *Vermont Rep.* 136,) it was ruled that the endorsee had no right to fill a blank endorsement with any special contract or warranty, but only with an order to pay the contents to him for value received. See also *Aymer* v. *Sheldon*, (12 *Wend.* 439.)

The endorsement of Carpenter and Overington must, therefore, be considered a joint endorsement; and being joint, it follows, that any obligation created by it upon them, must have been joint also; consequently, according to a rule of law, too well settled to admit of either doubt or question, the death of Carpenter, before the note became payable, or was paid, threw upon Overington, as the surviving endorser, the whole obligation growing out of the endorsement, to pay the note upon the default of the defendant. 5 *Buc. Abr.* 184. *tit. Obligation, D.* 4, (*Wilson's* 6th ed.). *Towers* v. *Moore*, (2 *Vern.* 99.) *Foster* v. *Hopper*, (2 *Mass. Rep.* 572.) *Whitaker* v. *Keppele*, (1 *Binn.* 123.) *Reed* v. *Garwin's Ex'ors*, (7 *Serg. & Rawle*, 354.) So on the other hand any right that accrued to them as payees of the note, to maintain an action thereon against the defendant, survived to Overington upon the death of Carpenter; and no action, after the death of the latter, could be supported upon the note, except in the name of the former. The present plaintiffs therefore can maintain no action upon the note in their own names, either in their representative character or otherwise. *Rolls* v. *Yate*, (*Yelv.* 177.) S. C. 2 *Brownl.* 207. 1 *Bulstr.* 25. *Bull. N. P.* 157-8. *Anderson* v. *Martindale*, (1 *East*, 497.)

The obligation, arising out of the endorsement, by Carpenter and Overington, of the note to the bank, being joint, it cannot be questioned but that at law the obligation survived against Overington alone, and the estate of Carpenter became thereby discharged from all liability on account of it. Had Carpenter derived any benefit or

advantage from his endorsing the note, by having received the money or any portion thereof advanced upon it, the bank might then have had a claim in equity against his estate, if Overington and the defendant had proved insolvent and unable to pay. But Carpenter and Overington appear to have derived no advantage whatever from the advancement of the money or creation of the debt, and are therefore to be considered *in* equity as mere sureties for the defendant; consequently the bank can have no claim, founded upon equitable principles, against the estate of Carpenter, after his death, for the repayment of the money. *Ratcliffe* v. *Graves*, (1 *Vern.* 196-7.) *Harrison* v. *Field's Ex'ors*, (2 *Wash. Rep.* 136.) *Packer* v. *Julius*, (2 *Browne's Rep.* 31.) *Weaver* v. *Shryock*, (6 *Serg. & Rawle*, 262.)

Carpenter's estate then being in no wise chargeable with the payment of the note to the bank, the plaintiffs must therefore be considered as having paid the money voluntarily, for which they seek to recover here. But it has been argued that though Carpenter's estate may have been discharged, by his death, from the payment of the note, as to the bank, yet not as to Overington; that if Overington had been compelled to pay the whole or any part thereof, which the defendant had been unable to reimburse him, the estate of Carpenter would have been liable to one half of the loss, whatever it might have been. This liability, it is contended, arises from an implied promise growing out of the fact of their having become the joint sureties of the defendant. And certainly, unless there was an agreement, either express or implied, made by Carpenter in his lifetime, to divide the loss with Overington, that might accrue from their endorsement of the note in any event that should happen, the right on the part of Overington to claim contribution from Carpenter's estate would not be sustainable.

Now it is perfectly clear from the evidence, that there was no express agreement on the part of Carpenter to this effect; nor indeed any agreement between them on the subject, save the implied agreement, which, it is insisted on, arose from the mere fact of their becoming the joint sureties of the defendant. And indeed it would seem from the cases of *Johnson* v. *Johnson*, (11 *Mass. Rep.* 360,) *Taylor* v. *Savage*, (12 *Id.* 98,) and *Bachelder* v. *Fisk*, (17 *Id.* 464,) to have been so adjudged by the Supreme Court of Massachusetts, and to be considered there, the settled foundation upon which the right to contribution, as between co-sureties, rests. And accordingly, in the last of those cases it was held, that where the money had been paid after the death of the co-surety, an action of *assumpsit* would lie against his executors, upon an implied promise of the testator to contribute towards indemnifying his surviving co-surety. It seems impossible, however, in a great many of the cases, where the right to contribution has been held to exist, to fix it upon the basis of a contract, either express or implied. This is demonstrated very clearly

by Chief Baron EYRE in the case of *Deering* v. *The Earl of Win-chelsea,* (1 *Cox,* 318; S. C. 2 *Bos. & Pul.* 270.) It is possible, however, that a right to contribution may be created by express contract, where, without it, the right could not exist. *Craythorne* v. *Swin-burne,* (14 *Ves.* 165.) And certainly it may be regulated, restrained, or qualified by contract in any case. *Swain* v. *Wall,* (1 *Chan. Rep.* 149.) It is a mistake to conclude, because the right of contribution, in certain cases, appears to be connected with privity of contract between the parties, that therefore it must be referred to contract for its foundation in all. For then we should be compelled to decide against the right in every case, where it becomes impossible to connect it with a contract in some way, to which the parties were privy. And this would set the right aside altogether, perhaps, in a majority of the cases on this subject, where it has ever been held to exist; and in short, never controverted. It becomes necessary, therefore, to place it upon some general principles, which are alike applicable to all cases, where it has been held to exist, in order to sustain the right. Accordingly it was decided in the case of *Deer-ing* v. *The Earl of Winchelsea,* that the doctrine of contribution, as between sureties, was not founded on contract, but upon general principles of justice, which govern all cases; that it is the result of general equity on the ground of *equality of burthen* and *benefit,* according to the maxim, which prevails in a court of law as well as in equity, *qui sentit commodum, sentire debet et onus.* In *Cray-thorne* v. *Swinburne,* (14 *Ves.* 169,) this doctrine is recognised and fully approved by Lord ELDON; and he observes in regard to it, that this equity being universally acknowledged, persons acting under circumstances, to which it applies, may properly be said to act under the head of contract, implied from the universality of the principle; and upon that ground stands the jurisdiction assumed by courts of law. Likewise in *Campbell* v. *Mesier,* (4 *Johns. Ch. Rep.* 337,) Chancellor KENT affirms the doctrine, that contribution is not founded on contract, but on the principle, that *equality of burthen,* as to the common right, is equity. Mr. Justice STORY, in like manner, in his *Commentaries on Equity Jurisprudence, Vol. I. p.* 471-2, *sec.* 493, lays it down, that " the claim certainly has its foundation in the clearest principles of natural justice; for as *all* are *equally bound,* and *equally relieved,* it seems but just, that in such case all should contribute *in proportion* towards the *benefit obtained by all,* upon the maxim, *qui sentit commodum, sentire debet et onus.* The ground of relief does not, therefore, stand upon any notion of mutual contract, express or implied, between the sureties, to indemnify each other in proportion, (as has been sometimes argued); but it arises from principles of equity independent of contract." And in con-formity to these principles, it was determined by the court of appeals in Maryland, in the case of *Waters* v. *Reily,* (2 *Harris & Gill,* 305,) that the estate of a decedent, who was one of two co-sureties in a bond,

(Kennedy *v.* Carpenter.)

was not liable to contribute to the surviving surety, or his representatives, for money paid by him on the bond, though the principal was insolvent.   But Mr. Justice STORY is quoted, and said by the counsel for the plaintiffs, to have laid down a principle directly contrary to this, in his *Commentaries on Equity Jurisprudence, Vol. 1. p.* 475, *sec.* 497, where he says, " if one of the *sureties* dies, the remedy at law lies only against the surviving *parties ;* but in equity it may be enforced against the representative of the deceased *party,* and he may be compelled to contribute to the surviving *surety,* who shall pay the whole debt."   In support of this, he refers to the case of *Primrose* v. *Bromley,* (1 *Atk.* 89.)   By the term " sureties" here, I apprehend, that *joint debtors* merely are meant, such as had all derived a benefit from the debt, and therefore, were bound in equity, on account of the beneficial consideration, as well as at law, while living, to pay it : it could not have been used, I think, for the purpose of distinguishing mere sureties from those for whose benefit the debt was created.   The authority referred to will not support any other meaning than what I have suggested.   But besides, to construe the proposition as contended for by the counsel of the plaintiffs, would be making it contradict the principles laid down by the writer in page 471-2, and previously cited above.

By the application then of the doctrine, on the subject of contribution to this case, which seems not only to be in accordance with the principles of justice, but to have been generally received and established by the most respectable authority, the conclusion becomes irresistible that the plaintiffs have no claim against the defendant. The estate of their intestate being completely discharged by his death from the payment of the debt owing to the bank, and no longer chargeable with it, either at law or in equity, the payment by the plaintiffs must be viewed as voluntary, and the same as if any other person never having had any connexion with it, had paid it. To permit them therefore to maintain a suit in their own names, either as the administrators of Carpenter, or otherwise, against the defendant for the money paid to the bank, would be contrary to the rule so well established, that a third person cannot make the debtor of another his debtor, by paying the debt for him to the creditor, without the debtor's consent, so as to maintain an action in his own name against him for money paid, laid out, and expended to his use.

So if Overington had paid the money, he would have had no right to contribution from the estate of Carpenter, because his doing so, would have relieved the estate of the latter from no burthen whatever ; it was effectually relieved even before the debt became payable, by the death of Carpenter, so that there was no equality of burthen existing.

Judgment reversed.