## Case No. 14,464.

### UNITED STATES v. ARCHER.

[1 Wall. Jr. 173.][1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1847.[2]

EQUITY—DISCHARGE AT LAW—SURETY.

Where a party whose obligation to pay arises from his contract only—as a surety—is discharged at law, equity will not extend his liability in a case where there has been neither fraud nor accident.

(This decision is in conflict with U. S. v. Cushman [Case No. 14,908], which is denied in the Third circuit to be law.)

Archer in his life time became bound as "surety" to the United States for the payment by Mifflin and another, as "principals"

1 [Reported by John William Wallace, Esq.]
2 [Affirmed in 9 How. (50 U. S.) 83.]

of certain joint and several bonds. Suits were brought jointly against all the obligors and judgment so obtained on them; but before satisfaction was procured the principals became insolvent and the surety died. The present suits, bills in equity, were brought after the surety's death to recover the amount of the judgments out of his estate. And whether the United States could so recover was the question. The act of congress under which the bonds were given, enacts (March 2, 1799, § 65 [1 Stat. 676]) that when due, the collector, shall prosecute them "by action or suit at law:" and the same section gives any surety who shall pay the debt of his principal a right to proceed on the bond "in law or equity," &c.

Mr. Pettit, Dist. Atty., for the United States, relied principally on a case decided in 1836, by Judge Story (U. S. v. Cushman [Case No. 14,908]), the essential facts of which were the same as those of the present case. The argument of that judge is, in its outline, as follows: He admits that generally speaking, equity will not make a surety liable when discharged at law, but seems to confine the doctrine to cases "where the plaintiff seeks to have a bond joint in its form, reformed so as to make it joint and several." U. S. v. Cushman [supra]. No reform was needed here. And though as between the obligors, one might be surety only, and another principal, yet as towards the United States, "they were all principal debtors, jointly and severally liable as such by the general principles of law as well as in equity," a position for which he refers to Berg v. Radcliff, 6 Johns. Ch. 302. The defendants' argument supposed, that if a bond joint and several in form is sued against all the obligors, and a joint judgment is obtained thereon (U. S. v. Cushman), the joint judgment though unsatisfied, ipso facto, extinguished the several as well as the joint obligation ex contractu;" a doctrine for which "even at law" no authority had been cited, and which it would be difficult to maintain on principle. His honour says on the contrary, that "when a party enters into a joint and several obligation, he, in effect, agrees that he will be liable to a joint action and to a several action for the debt; and, if so, then a joint judgment can be no bar to a several suit, if that judgment remains unsatisfied. The defect of the opposing argument," he continues, is, "that it supposes that the obligee has an election only of the one remedy or of the other; and that by electing a joint suit he waives his right to maintain a several suit;" which he takes "not to be a sound legal interpretation of the contract." The remedies, he says, are concurrent, and he knew "of no principle of law, which would have prevented the plaintiffs from bringing a joint suit and a several suit on the bond at the same time, and proceeding therein pari passu." His honour cites for authority, five cases: Higgens' Case, 6 Coke, 44, saying however that it is "not directly in point to the present"; Dyke v. Mercer, 2 Show. 394, where "again the party sued was not a party to the former judgment"; Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253, "also distinguishable from the case at the bar," though a "remark of the court seems to apply in principle"; Ward v. Johnson, 13 Mass. 148, "also distinguishable"; and finally Lechmere v. Fletcher, 1 Cromp. & M. 623, where "again the facts did not call for any decision of the precise point now before this court." "But it was immaterial," he concludes, "whether a suit could be maintained at law or not. The joint contracts of debtors having a common interest are in equity treated as joint and several, wherever the joint remedy at law fails to enable the plaintiff to obtain satisfaction" (as in the case of a deceased partner). "A fortiori the same principle will be applied, &c. in the case of a contract in form joint and several where the survivors are insolvent. . . . . . It is against conscience that a party who has severally agreed to pay the whole debt, should by the mere accident of his own death, deprive the creditor of all remedy against his assets. So courts of equity have always treated the matter, and the present case is but a new application of a very old and well established doctrine." Story, Eq. Jur. § 676, and note; Id. § 164, and notes. His honour refers to two cases decided by Sir William Grant (Devaynes v. Noble, 1 Mer. 564; Sumner v. Powell, 2 Mer. 30) as giving a very clear exposition of the doctrine and of the grounds of equitable interference; and cites also Rawstone v. Parr, 3 Russ. 424, "though the case was finally disposed of on another ground."

Mr. Meredith and Mr. Miles, for the defendant.

The bonds being joint and several, the U. S. could sue them either jointly or severally, but cannot sue them in two ways. "It is at the election of the obligee," says Sergeant Williams (Cabell v. Vaughan, 1 Saund. 291, note 4), in speaking "of actions upon joint or several bonds." "to consider such a bond a joint or several one. If he sues one or each of the obligors, he acts upon it as a several bond: if he sues all of them he proceeds upon it as a joint bond." . . . . "If two are jointly and severally bound." says Bacon (Bac. Abr. tit. "Obligation," D, 4), "and there is judgment on a joint action against both, the execution must be joint against both; for though the plaintiff might have sued them severally, yet by suing them jointly he has made his election." . . . . "If the contract is joint as well as several." says a recent writer (Pitm. Sur. 84, quoting Lord Talbot as post), "the creditor may sue the parties jointly: but if he elects to sue them jointly, he cannot sue them severally, for the pendency of one suit may be pleaded in abatement of the other." Adjudged cases are to the same effect. "The cause of action,

said the court of K. B. in 1607 (Brown v. Wootton, Cro. Jac. 73, 74), when the principle is clearly found, "being against divers, for which damages uncertain are recoverable, and the plaintiff having judgment against one person for damages certain, that which was uncertain before, is reduced in rem judicatam and to certainty, which takes away the action against the others." The precise doctrine was assumed true, as of course, by Lord Talbot in 1735 (Ex parte Rowlandson, 3 P. Wms. 406), and was conceded by opposing counsel as of course: "At law," says the chancellor, "when A. and B. are bound jointly and severally to J. S., if J. S. sue A. and B. severally, he cannot sue them jointly; and on the contrary, if he sues them jointly, he cannot sue them severally, but one action may be pleaded in abatement of the other." The counsel against whom the decree was, admit the doctrine, and apply it to the very case where "at law two men are bound jointly and severally in a bond." In 1812, Lord Eldon illustrates (Ex parte Brown, 1 Ves. & B. 65) an argument in bankruptcy by saying, "under a joint and several bond, the obligee, though he might have several executions, could not bring a joint and also two several actions. The point was adjudged, precisely, in Pennsylvania, A. D. 1825 (Downey v. Farmers' & Mechanics' Bank, 13 Serg. & R. 289), on general principles, in a case, too, "where the court felt a strong inclination to assist the plaintiff," but could not, "because upon looking well into it the law was too strong against them." After bringing a joint action, said C. J. Tilghman in that case, "the bond is to be taken as joint only, and can never after be proceeded on as a several obligation." This case has been twice affirmed in the same state. Walter v. Ginrich (1834) 2 Watts, 204; Stoner v. Stroman (1845) 9 Watts & S. 85. In Minor v. Mechanicks' Bank (1828) 1 Pet. [26 U. S.] 37, in the supreme court of the United States, Judge Story says, on "a joint and several bond, the plaintiff might have commenced suit against each of the obligors severally, or a joint suit against them all." He has no right to commence a suit against any intermediate number. "He must sue one or all." Certainly then, the remedies are not concurrent as supposed (U. S. v. Cushman [supra]) by Mr. Justice Story, and there is a settled principle of law, distinctly enunciated by Talbot and Eldon—asserted from the bench of the supreme court by Judge Story—and solemnly decided in Pennsylvania, which does prevent a plaintiff "from bringing a joint and several suit at the same time, and proceeding thereon pari passu." U. S. v. Cushman. Of the five authorities in U. S. v. Sumner, every one is admitted to be not in point: their language, only, or supposed principle is relied on. The first (Higgens' Case, 6 Coke, 44) decides "that where two are bound jointly and severally, and the obligee has judgment

against one of them, he may yet sue the other." U. S. v. Cushman. Of course he may. In the second (Dyke v. Mercer, 2 Show. 394), "two men were bound in a bond to J. S.; one was sued, who pleaded that his co-obligor had been sued to judgment, and thereupon a fi. fa. issued and the sheriff levied the money. Upon demurrer it was held that the plea was bad, it not averring any satisfaction." U. S. v. Cushman. What application has this? the case not showing at all, that the bond was joint merely, and it having been no doubt joint and several. In the third (Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253), judgment had been obtained against J. who was afterwards discharged as an insolvent; under a local law of course, the terms of which are not stated in the report. The plaintiff then discovering that M. was originally liable with him (as a secret partner), brought a joint suit against J. and M. J. was discharged from liability under this suit, either by nolle prosequi or something equivalent to it, and judgment given against M. alone. See the case in 7 Cranch [11 U. S.] 208, where it came again, on judgment against Mandeville, alone. The case is a peculiar one, turning on the effect of a discharge of one of the defendants under a local law whose provisions are not stated, and is cited by Judge Story for no more than that the several judgment was no bar to a joint action, "at least as to the partner not sued before." See the case well explained by Mr. H. B. Wallace, 1 Smith, Lead. Cas. (Phila. Ed 1847) 337, note. Even if the case decided, that after a several judgment against one partner, a joint judgment could be had against both, it would be but the converse of the proposition for which it is cited, and would be at variance with the highest decisions made in full view of it, both in this country and England.[2] The fourth case (Ward v. Johnson, 13 Mass. 148) is more than distinguishable. It is in principle at variance. "Suit was brought against one partner upon a partnership contract, and afterwards a joint suit against both. . . . The court held that . . . the joint suit was not maintainable." U. S. v. Cushman. The last case is Lechmere v. Fletcher, 1 Cromp. & M. 623. In that case there was an original partnership debt

---

[2] To Willings v. Consequa, in this circuit [Case No. 17,767], A. D. 1816, by Judge Washington, who assisted in the determination, and does not refer to it as deciding differently from him. To Ward v. Johnson (A. D. 1816), in Massachusetts (13 Mass. 151), in which the case is explained, and a decision made in conflict with it if held generally. In New York to Penny v. Martin (A. D. 1820) 4 Johns. Ch. 566, by the chancellor (Kent;) and at law to Robertson v. Smith (A. D. 1821) 18 Johns. 459. And see Peters v. Sanford (A. D. 1845) same court, 1 Denio. 224. In Pennsylvania to Smith v. Black (A. D. 1822) 9 Serg. & R. 142, and to Anderson v. Levan (A. D. 1841) 1 Watts & S. 339. And, finally, in England to King v. Hoare (A. D. 1844) 13 Mees. & W. 494, in which case, as in Robertson v. Smith, it is particularly adverted to, and its reasoning pronounced not satisfactory.

on which a joint suit was brought: . . . one of the defendants had a verdict in his favour, and the other a verdict and judgment against him. Afterwards the plaintiff brought a sole suit against the defendant, who had the verdict in his favour upon a distinct promise made to him before the former suit was brought (U. S. v. Cushman) and had a judgment. That was right enough, but it has no application either to the case of U. S. v. Cushman, or to this. All the authorities cited by Judge Story are thus disposed of: not one of them applies.

The question then is simply: Will equity make a surety liable, who is discharged at law? It being conceded that the surety has received no personal benefit from his bond, and that there has been neither fraud, ignorance, mistake or inadvertence in ·the case. That it will relieve, where through fraud or accident even a surety is discharged, is true: and though there have been neither fraud nor accident, it also will against any co-obligor, who, though discharged at law, has yet, himself had the benefit of the contract which he seeks to evade. Simpson v. Vaughan, 2 Atk. 31; Bishop v. Church, 2 Ves. Sr. 100; Thomas v. Frazer, 3 Ves. 399; Hunt v. Rousmanier, 1 Pet. [26 U. S.] 16. But as early as 16:3, the lord keeper declared (Ratcliffe v. Graves, 1 Vern. 196, 1 Eq. Cas. Abr. 93, c. 13, K. pl. 3) that as a general rule, "he would not charge the sureties further than they were answerable at law," and dismissed a bill seeking so to charge them. In 1735, Lord Talbot refused (Heard v. Stanford, Forrester, 173, 3 P. Wms. 409) to hold a husband liable in equity for his wife's debts, he being discharged at law; this "though he had a large fortune with her." In 1795, the liability of a surety was carefully considered in the court of appeals of Virginia (Minge's Ex'r v. Field, 2 Wash. [Va.] 136), where the accurate reporter's syllabus is: "If a bond be made joint without fraud or mistake, equity will not charge the executor of the surety, who was discharged at law by his death in the lifetime of the principal. Aliter, if the lending had been to both." "The surety," says the president of the court (Id. 140), "received no benefit from the loan: he was bound by no contract, express or implied, antecedent to the bond: he was under no moral obligation to pay, and of course equity would not bind him further than he was bound at law." Sumner v. Powell, 2 Mer. 30, A. D. 1816, to which U. S. v. Cushman refers, as giving "a very clear exposition" of the doctrine of equity, was in effect this: A. and B. were partners. The name of C. afterwards appeared as a partner, but he never took any share of the profits, nor received any thing beyond a fixed·salary. B. embezzled certain funds and applied them to the partnership purposes, both A. and C. being ignorant of his act. A. afterwards retired from the firm, taking a joint covenant of indemnity from B. and C. against claims upon him as a partner. C. died, B. surviving insolvent. A. having been made to account as a partner for B.'s embezzlement, filed a bill against C.'s executors to have indemnity under the covenant which he sought to have treated as joint and several. But Sir William Grant refused to give it, because C. had received no benefit from the embezzlement, and his obligation to indemnify existing—not in virtue of any "antecedent liability"—but only as matter of "arbitrary convention," its extent could be measured only by the words in which it is conceived. Chief Justice Tilghman of Pennsylvania, applies (Weaver v. Shryock, 6 Serg. & R. 264, A. D. 1820, confirmed in Kennedy v. Carpenter, 2 Whart. 344) the doctrine in favour of a surety. He declares "that going as far as equity has done to follow the assets of a joint debtor, is carrying the matter far enough," and that "no case can be shewn where equity has charged the estate of a surety which has been discharged at law." He examines the older authorities, especially a case mentioned by Lord Hardwicke in Primrose v. Bromley, 1 Atk. 90, which has been misunderstood, and shews that it was the case of a joint beneficiary: and his general positions about sureties are exactly confirmed in the court of appeals in Maryland. Waters v. Riley, 2 Har. & G. 305, A. D. 1828. And see Story, Eq. Jur. § 164. Where a creditor had obtained judgment against certain known partners, being ignorant of three dormant ones, Chancellor Kent refused (Penny v. Martin, 4 Johns. Ch. 566) to lend equitable aid to reach them.

Admit that these cases were of joint bonds or joint debts not of joint and several ones, how is that important here? The several virtue of the bond, having been merged, destroyed and surrendered by the obligor himself, who had them all in his own hands—for the preferred and higher security of a joint judgment. The bond has no existence at all as a security, after the judgment. To use the language of Ventris (volume 2, p. 348), "it is drowned in the judgment," and the surety is bound in this case by a joint judgment only, just as in the cases cited he was by a joint bond: and in both he has been discharged. The errour of Judge Story's conclusion, springs from a fact assumed by him in his outset as true, but which in fact, is wholly untrue, "that where an obligation is joint and several the remedies are concurrent." They are "elective." One of his positions stated as an argument, takes the whole matter for granted: "When a party," he says (U. S. v. Cushman) "enters into a joint and several obligation, he in effect agrees that he will be liable to a joint action and to a several one." But this is not "so." He agrees to be bound just so far and in just such a manner as, in law or equity, he is

bound, neither further nor otherwise: and to say that in either law or equity he is bound severally after the joint judgment—what is that but to assume the question in controversy? In Berg v. Radcliff, 6 Johns. Ch. 302, relied on by Judge Story, a testator devised his real estate to pay debts, some of which arose from suretyship. He had never been discharged from them in law or equity, and in directing his executors to pay them Chancellor Kent only enforced a trust which the testator had himself created.

Mr. Pettit, in reply.

Every one of the cases cited on the other side was of joint debts merely. Those in Virginia (Minge's Ex'r v. Field, 2 Wash. [Va.] 136), Maryland (Waters v. Riley, 2 Har. & G. 305), and Pennsylvania (Weaver v. Shryock, 6 Serg. & R. 264) of joint bonds; and those before Sir William Grant (Sumner v. Powell, 2 Mer. 30) and Chancellor Kent (Penny v. Martin, 4 Johns. Ch. 566) of partnership or joint debts. In the Maryland case, the chief justice notes the circumstance that the bond was intentionally required to be "joint" and not "joint and several." Now the whole point of Judge Story's decision turns on the distinction between bonds merely joint and those that are joint and several: Of course none of the cases apply, and the doctrine of them all is elsewhere admitted by Judge Story himself. Story, Eq. Jur. §§ 162–164. When in making a bond, the debtor super-adds a "several" to his joint liability, who can say that nothing is meant by the addition? It undoubtedly "is against conscience," as Judge Story says (U. S. v. Cushman) that a party who has severally agreed to pay the whole debt, should by the mere accident of his own death deprive the creditor of all remedy against his assets. For the creditor looked to him severally, and as a surety trusted him principally, perhaps altogether. Admit that at law the remedies are but elective. This present suit is an application for equitable aid: and we ask the court to look behind the judgment at that "antecedent liability" so much spoken of on the other side, which the bond originally gave, and of which through an accident of the law the party has been deprived.

GRIER, Circuit Justice. That the case of U. S. v. Cushman, decided by the late Justice Story, and pressed upon us in behalf of the United States, is, in all material facts, similar to the present cannot be denied; and such is the reverence entertained by this court for the learned judge who decided it, that the weight of his single name would have been amply sufficient to draw assent from our minds in a case otherwise susceptible of a doubt. But as all other authority is, in our opinion, to be placed in the opposite scale, we have ventured, though with diffidence, to dissent from his conclusions.

1st. The allegation that an obligee who has obtained a joint judgment against all the obligors. may afterwards sue them or their representatives severally, assumes too much for the plaintiff's case. If such be the law, the plaintiff has ample remedy at law, without invoking the aid of a court of equity.

But the law appears to be well settled, that if two or more are bound jointly and severally, the obligee may elect to sue them jointly or severally. But having once made his election and obtained a joint judgment, his bond is merged in the judgment "quia transit in rem judicatam." Indeed it is essential to the idea of election that the obligee cannot have both a joint and several action: and no case can be found to countenance the doctrine (Brown v. Wootton, Cro. Jac. 73; Bac. Abr. "Obligation," D, 4; Streatfield v. Hall'day, 3 Durn. & E. [3 Term R.] 782; Hurl. Bonds, '97; Minor v. Mechanicks' Bank, 1 Pet. [26 U. S.] 73; Ex parte Brown, 1 Ves. & B. 65; Pitm. Sur. 85; Downey v. Farmers' & Mechanics' Bank, 13 Serg. & R. 288; Walter v. Ginrich, 2 Watts, 204; Stoner v. Stroman, 9 Watts & S. 88; Poll. 641; 2 Vent. 348) that he can.

2d. That the death of the defendant's testator after judgment discharged his assets, and that no action at law lay against him, the bill impliedly admits, and it has not and cannot be denied. U. S. v. Cushman [Case No. 14,907]; Reed v. Garvin's Ex'rs, 7 Serg. & R. 354; Stiles v. Brock, 1 Pa. St. 215; Erwin's Lessee v. Dundass, 4 How. [45 U. S.] 77.

3d. It cannot be disputed that equity will reform an instrument even as against a surety, where there has been fraud or mistake; and give a remedy against the estate of a deceased joint debtor, where he has been personally benefited by the consideration of the contract. Story, Eq. Jur. §§ 162–164, 676; Primrose v. Bromley, 1 Atk. 90; Simpson v. Vaughan, 2 Atk. 31; Bishop v. Church, 2 Ves. Sr. 101, 371; Devaynes v. Noble, 1 Mer. 568; Sumner v. Powell, 2 Mer. 36; Thomas v. Frazer, 3 Ves. 399. But that it will give assistance as against a mere surety, who has received no personal benefit, when his liability is discharged at law, is a proposition not only unsupported by precedent, but denied by many authoritative decisions. To some of these it will be proper more particularly to refer.

In Hunt v. Rousmanier, 1 Pet. [26 U. S.] 16, the court (referring to the cases last above quoted,) say, "the cases alluded to are those in which equity has afforded relief against the representatives of a deceased obligor in a joint bond given for money lent to both the obligors, although such representatives were discharged at law. The principle upon which these cases manifestly proceed, is, that the money being lent to both, the law raises a promise in both to pay, and equity considers the security of

the bond as being intended by the parties to be co-extensive with this implied contract by both to pay the debt."

The court of appeals of Maryland (Waters v. Riley, 2 Har. & G. 305), in reference to this subject, declare the general rule to be, "that where the remedy at law is gone, chancery will not revive it, in the absence of any accident, fraud or mistake; to which the case of a bond where all are principals, has been held to be an exception, each being equally benefited, and under an equal moral obligation to pay the debt, independent of the bond, to which equity relates back, when the remedy on the bond at law is gone. But in case of a surety who is bound only by the bond itself, and is not under the same moral obligation to pay, equity will not interfere to charge him beyond his legal liability."

The same doctrine is fully recognized by the supreme court of Pennsylvania in several cases, and by the court of appeals in Virginia. Weaver v. Shryock, 6 Serg. & R. 264; Kennedy v. Carpenter, 2 Whart. 361; Minge's Ex'r v. Field, 2 Wash. [Va.] 136.

This case cannot be distinguished from those I have quoted, on the ground of the United States being party plaintiff: for the same rules of contract are applicable where the sovereign is a party as between individuals. Hunter v. U. S., 5 Pet. [30 U. S.] 174. On the contrary, the act of congress of March 2, 1799, § 65, in pursuance of which the bonds in this case were given, while it gives a surety who has paid the bond a remedy both at law and equity against his principal, requires on behalf of the government, that prosecutions for the recovery of the money "shall be by action or suit at law." Now while I doubt not but that the assistance of a court of equity, as ancillary to a court of law, may be invoked to obtain a remedy where there is a legal obligation to pay the bond; it is plain that the statute does not provide for the enforcement of a mere equitable right in favour of the United States, where their obligations are discharged at law, or claim for them any privilege or prerogative beyond any other corporation or individual.

A surety in a bond to the United States, is under no higher legal or moral obligation to pay the money than if an individual were the obligee. And the extent of that obligation in common cases, both at law and equity is well established by decisions of tribunals of the highest authority. I do not think the court is bound to depart arbitrarily from all precedent, or to establish new and anomalous principles, to suit the necessities of the government. Congress may alter the law, if they see fit, but it does not become the court to legislate when they have omitted it. Bills dismissed.

[Upon appeals by the plaintiff to the supreme court, the decrees dismissing the bills were affirmed. U S. v. Price. 9 How. (50 U. S.) 83.]