THE UNITED STATES, APPELLANTS, *v.* ELI R. PRICE, EXECUTOR OF JOSEPH ARCHER.

SAME *v.* SAME.

Where there were joint and several bonds given for duties, and the United States had recovered a joint judgment against all the obligors, and then the surety died, it was not allowable for the United States to proceed in equity against the executor of the deceased surety for the purpose of holding the assets responsible.

THESE two cases were brought up, by appeal, from the Circuit Court of the United States for East Pennsylvania, sitting as a court of equity.

The United States filed a bill on the equity side of the

court at October term, 1843, against the executors of Joseph
Archer, deceased, claiming to recover from the estate of said
Archer the amount of certain duty bonds, or part thereof. The
two cases were alike, except that in one the bonds were signed
by Mifflin and Archer, and in the other by Mifflin, Archer, and
one Foster. This made some difference in the argument of
the cases; but the point upon which the court rested its decis-
ion was common to both cases, and renders it unnecessary to
notice this difference further.

There was no controversy about the facts in the case, which
were these.

In 1828, James L. Mifflin was the owner and importer of
three invoices of goods by the ship Nassua, from Canton, to the
port of Philadelphia, and said Mifflin duly entered them in the
custom-house. Bonds to the United States for the payment of
the duties, under the then existing law, were executed by the
said James L. Mifflin, the owner and importer, as the principal
debtor, and William Foster and Joseph Archer as sureties.
The bonds were joint and several, and in the usual form.

In 1829, the United States obtained judgments against all
the obligors (Mifflin, Foster, and Archer, then living) in these
bonds, upon their joint responsibility, in a suit at law in the
District Court of the United States for the Eastern District of
Pennsylvania. The judgments were against them jointly, and
no process issued against them severally at any time.

In 1840, William Foster, a co-defendant in the judgments
and a co-security in the original bonds, after his release by the
United States (1833), died insolvent.

On September 28, 1841, Joseph Archer, the co-defendant in
these judgments and a co-security in the original bonds, died,
and his executor is the defendant in this proceeding in equity.

James L. Mifflin, a co-defendent in these judgments and the
principal in the original bonds, was surviving at the date of the
filing of this bill and the decree.

The bill, after setting forth the execution of the bonds by
Mifflin and Archer, and the recovery of the judgments against
them, charges that Mifflin, at the time, and long before the
death of Archer, was utterly insolvent and unable to pay his
debts; that he had been discharged as an insolvent debtor un-
der the insolvent acts of Pennsylvania, before the death of
Archer, and since that event he had been discharged as a bank-
rupt, under the act of Congress passed in 1841, to establish a
uniform system of bankruptcy throughout the United States.
The bill further charges that Archer, in his lifetime, and at the
time of his decease, being seized of real estate and possessed

The United States v. Price.

of a very considerable personal estate, made his last will, and departed this life on the 24th of September, 1841, leaving the same unrevoked, and appointing the defendant his executor, as set forth in the bill. And the complainants aver that the whole of the principal sums, with arrears of interest, and costs of the said bonds and judgments, are still due and payable to the United States, and that by law and equity they are entitled to be paid out of the assets of Archer's estate, in preference to all other creditors, legatees, or devisees, and charge that the executor has been selling and disposing of the estate, and wasting the same, to their injury and loss, and in derogation of their rights. After certain interrogatories, the United States therefore pray, that an account may be taken of the amount due them for principal, interest, and costs; and also an account of the personal estate of the testator, which came to the hands of Price and Bispham, as executors, and to the hands of Price since the discharge of Bispham as executor; and that they shall be decreed to pay to the United States what shall appear to be due and owing to them out of the testator's personal estate, in a due course of administration. And in case the same shall be insufficient for the purpose, then, out of the real estate of which the testator died seized, to make good any such deficiency; and that the right of the United States to a preference in payment out of the said assets, estate, and effects, and the proceeds thereof, may be decreed and established, and for further relief.

The answer admitted the execution of the bonds, and averred that Mifflin was principal and Archer surety. It admitted also the sufficiency of assets and the facts stated above, submitting the case to the judgment of the court upon them.

In October, 1846, the cause came on to be heard upon bill, answer, and exhibits, when the Circuit Court dismissed both bills.

An appeal from this decree brought the cases up to this court.

They were argued by *Mr. Johnson* (Attorney-General), for the appellants, and by *Mr. Miles*, for the appellee.

*Mr. Johnson*, for the United States, made several points, but as the decision of the court turned upon a single one, it is only necessary to notice that one, viz. : —

II. That the bonds were several as well as joint, and each obligor was therefore responsible for the whole debt; and that the joint judgments upon the bonds did not, for the purposes of the present cases, take from the United States the right to consider the estate of Archer as responsible for the whole debt, which they could have done before judgment. United States

*v.* Cushman, 2 Sumner, 434, and cases therein cited; Jackson
*v.* Thorpe, 2 Younge & Collyer, 562.

*Mr. Miles,* for the appellee, made the following points: —

1. The judgment having been obtained against the obligors
jointly, the severalty of the original obligation is determined
by the act of the plaintiffs, and the bond is merged in the
judgment. If two or more are bound jointly and severally,
the obligee may elect to sue on either the joint or several obli-
gation, and if he elects the former, and proceeds to judgment,
he cannot afterwards proceed on the latter.

"It is at the election of the obligee to consider such a bond
either as a joint or several one."

Pitman on Principal and Surety, 85; Higgens's case, 6
Coke, 44; Putt *v.* Rawsterne, Poll. 641; Brown *v.* Wootten, 2
Vent. 348; Minor *v.* Mechanics' Bank, 1 Pet. 73; Downey *v.*
Bank, 13 S. & R. 288; Walter *v.* Ginrich, 2 Watts, 204;
Reed *v.* Garvin's Ex., 7 S. & R. 355; McFall *v.* Williams,
2 S. & R. 280; Stoner *v.* Strornan, 9 Watts & S. 88; U.
States *v.* Thompson, 1 Gilpin, 622 (case of duty bonds); Ken-
nedy *v.* Carpenter, 2 Wharton, 364; U. States *v.* Cushman, 2
Sum. 310; 1 Saund. 291, note; Cro. Jac. 73; 1 Chit. Pl. 35;
Com. Dig., *Action,* K. 4; 5 Bac. Abr., *Obligation,* D. 4; 3 T.
R. 782; Hurlstone on Bonds, 98; 2 Lev. 228; 1 Ves. &
B. 65.

Per C. J. Tilghman : — "A joint and several obligation
may be proceeded on either as a joint or several contract, at the
choice of the obligee. Having treated it as joint, he cannot
afterwards consider it several." This, although but one be
served, and judgment against him only.

Per Kennedy, J. : — "It cannot be questioned that the judg-
ment obtained against the obligors, in an action brought against
them jointly, merged the bond, so that no subsequent action
against the obligors, either jointly or severally, could be main-
tained thereon."

This doctrine is impliedly admitted by Mr. Justice Story, in
the proceeding at law before him.

2. The result of this is: —

1. The bond being merged in the joint judgment, the plain-
tiffs, up to the time of its rendition, had "a remedy in law."
That remedy continues against the survivor. Hence no equity
jurisdiction.

2. If it were that an obligee, who has obtained a joint judg-
ment against all the obligors, might afterwards sue them or
their representatives severally, the plaintiffs have a "remedy at

law," and cannot invoke the aid of a court of equity. The basis of the bill is, that the plaintiffs have no remedy at law.

3. On the rendition of the joint judgment, Mifflin and Archer stood in the relation of joint contractors or judgment debtors, with all the incidents thereto appertaining in law and equity. Among them are, —

1. Acceptance of a judgment against one ; a discharge of the others.

2. Release of one discharges all.

3. The death of one joint debtor discharges his estate (except by statutory lien on real estate, which is not the case here), casts the burden on the survivors, and the remedy at law is only against the survivors.

4. Other matters occurring after the rendition of the judgment (see propositions *c* whic follow), discharged the right against the estate of Joseph Archer, and for want of right there was no remedy either in law or equity.

At law, the death of Joseph Archer, a co-debtor in the joint judgment, after its rendition, discharged his assets, and no action at law lay against his executor, upon the bond, being merged in the judgment, or upon the judgment itself, the only proceeding at law being against the surviving defendant therein.

1. The plaintiffs' bill impliedly assumes this as to the remedy, or otherwise they could not come into equity at all.

2. The plaintiffs' right in law against the assets of the decedent is *ipso facto* by the death defeated. And to this point are all the authorities.

Per Kennedy, J.: — "That one of two joint debtors dying is thereby discharged, both in person and estate, at law, from the payment of the debt, is too well established to be controverted." (Only exception, case of special lien on lands, *post.*)

U. States *v.* Cushman, 2 Sum. 310 ; Reed *v.* Garvin's Ex., 7 S. & R. 357 ; Lompton *v.* Collingwood, 4 Mod. 315 ; 4 How. 77 ; Kennedy *v.* Carpenter, 2 Whart. 364 ; Towers *v.* Moor, 2 Vern. 99 ; Foster *v.* Hooper 2 Mass. 572 ; Lang *v.* Keppele, 1 Binn. 123 ; Smart *v.* Edson, Lev. 30 ; 2 Saur lers, 51, ⌐48, *a*, note 4 ; Thomas Raymond, 26 ; 1 Sid. 238 ; Stat. West. 2d ; Stiles *v.* Brock, 1 Barr, Pa. St. Rep. 215, and all the cases collected therein as to special lien on malty by judgment, created by statute.

*Note.* — There is a class of cases which do not interfere with this proposition, and are clearly distinguishable. These are to the effect, that, where a joint judgment is obtained against more than one defendant, — and by statutes in England and many of

the United States, such judgment is a specific lien on 'the lands or realty of all the defendants, for various periods, — in such case a *scire facias* may be issued, to have execution of the lands of a deceased defendant in the hands of executors, terre-tenants, heirs, or devisees, by force of the special statutory provision. This may be coupled with a *scire facias*, to have execution against the goods of the surviving defendants; but the personalty and general assets or estate of the deceased defendant are discharged by his death.

In the present case there was no such specific statutory lien. There was no real estate of Joseph Archer deceased to bind by lien by the judgment in which he was a joint defendant at the time of his decease.

This is a case purely of general assets, and personalty unfettered by any statutory lien; and wholly subject to the general rule, as set forth in this proposition.

In equity, the right and remedy are extinguished, as well as at law, against the estate and assets of Joseph Archer deceased, by reason of his (a joint debtor and surety's) death.

1. In general, if the right against decedent's estate is discharged at law, it must be 'n equity, because equity creates no other right in favor of a claimant, or liability on the part of those against whom the claim is made, than exists by general law. The distinction between law and equity merely applies to the remedy or its form, and not to rights or duties.

2. But what is conclusive, Joseph Archer was a mere surety, in no wise personally benefited by the consideration of the original transaction, bound only by the original bond and the judgment thereon, who was under no moral obligation to pay; there being no question (in the sense of equity) of accident, fraud, or mistake, and the legal liability of his estate was gone.

The pleadings in this case assume these as facts.

The acts of Congress distinguish between principal and surety, both before and after judgment against them.

After the judgments (rendered in 1829), the plaintiffs recognized, by the release of Foster in 1833, Archer as a mere surety.

Independent of this, and the provisions of the acts in general, the relation of the principal and surety, after judgment, exists as to third persons.

In such case, then, equity will give no relief against the representatives or the estate of the deceased surety, and so are all the authorities, except the hastily considered Circuit case in 2 Sumner. Commonwealth *v.* Haas, 15 S. & R. 252; Potts *v.* Nathans, 1 Watts & Serg. 158.

In Hunt v. Rousmanier, 1 Peters, 16, (referring to a class of cases hereinafter mentioned,) the court say, "Equity has afforded relief against the representatives of a deceased obligor in a joint bond given for money lent to both the obligors, although such representatives were discharged at law. The principle upon which these cases manifestly proceed is, that, the money being lent to both, the law raises a promise in both to pay, and equity considers the security of the bond as being intended by the parties to be coextensive with this implied contract by both to pay the debt."

In Waters v. Riley, 2 Harr. & Gill, 310, the Court of Appeals of Maryland say that the rule is, "When the remedy at law is gone, chancery will not revive it, in the absence of any accident, fraud, or mistake; to which the case of a bond where all are principals has been held to be an exception, each being equally benefited, and under an equal moral obligation to pay the debt, independent of the bond, to which equity relates back, when the remedy on the bond at law is gone. But in case of a surety who is bound only by the bond itself, and is not under the same moral obligation to pay, equity will not interfere to charge him beyond his legal liability."

The Supreme Court of Pennsylvania, per C. J. Tilghman, say, of all the cases cited in reference to this question, "So far from establishing any principle by which the estate of the deceased obligor, a bare security, can be charged in equity, they rather prove that it should be discharged, because in none of them has the estate of the obligor who died first been charged, unless he might fairly be considered as a principal, who derived benefit from the money for which the bond was given, thus establishing a distinction between principal and security." Weaver v. Shryrock, 6 S. & R. 266. (Equity principles were always a part of the law of Pennsylvania, administered through common law forms.) Same point. "The obligation between C. & B. to the bank being joint, it cannot be questioned but that at law the obligation at the death of C. survived against B., and the estate of C. became thereby discharged from all liability on account of it. Had C. derived any benefit or advantage by having received the money, or any portion thereof, the bank might then have had a claim in equity, &c. But C. & B. appear to have derived no advantage whatever from the advancement of the money or creation of the debt, and are therefore in equity as mere sureties; consequently the bank can have no claim, founded upon equitable principles, against the estate of C., after his death, for the payment of the money." Kennedy v. Carpenter, 2 Whart. 361, and the cases therein re-

8*

viewed. Same point. "A well-considered case," says C. J. Tilghman, in Weaver v. Shryock. The decree of the chancellor, who had granted relief to the obligee against the executor of the deceased obligor, the survivor being insolvent, was reversed in the Court of Appeals of Virginia. Harrison v. Field's Executors, 2 Wash. 136.

Bearing in mind the distinction in case of joint debts between the principal, who had consideration and advantage, and the estate of a deceased mere surety, who in his lifetime had none, all the cases (with a single exception) are confirmatory of this proposition in principle. Story's Eq. §§ 162, 163, 164, 676; Primrose v. Bromley, 1 Atk. 90; Simpson v. Vaughan, 2 Atk. 31; Bishop v. Church, 2 Vesey, 101, 371; Devaynes v. Noble, 1 Meriv. 568; Sumner v. Powell, 2 Meriv. 36.

See the English cases to the point all well collected in Pitman on Principal and Surety, 91 (Law Lib., Am. ed. 74). The author says, "No case has hitherto occurred where equity has varied the legal effect so as to charge the surety."

An isolated case stands in opposition to all the rest, and it is suggested that it was not well considered at Circuit. The learned judge, in his Commentaries, also says, "If one of the sureties dies, the remedy at law lies only against the surviving parties; but in equity it may be enforced against the representative of the deceased party, and he may be compelled to contribute to the surviving surety, who shall pay the whole debt." U. States v. Cushman, 2 Sumner, 430, &c.; 1 Story's Eq. Jur. §§ 475, 497.

The Supreme Court of Pennsylvania, in commenting on this passage say, "In support of this, he (the learned Judge) refers to Primrose v. Bromley. By the term 'sureties' here, joint debtors are merely meant, such as had all derived a benefit from the debt, and therefore were bound in equity, on account of the beneficial consideration, while living, to pay it; it could not have been used for the purpose of distinguishing mere sureties from those for whose benefit the debt was created. The authority will not support any other meaning than that now suggested." And so of the authorities relied on in United States v. Cushman; all were cases of principal debtors. Kennedy v. Carpenter, 2 Whart. 364; 1 Atkyns, 69.

Mr. Justice GRIER delivered the opinion of the Court.

As the decision of one of the points raised in these cases will rule them both, it will be unnecessary to notice the others.

The complainant seeks a remedy in equity against the assets of a deceased surety, in certain bonds given for duties. The

bonds were joint and several, but a joint judgment had been recovered on them against all the obligors. The principal in the bond survives, but is insolvent.

The question for our consideration will, therefore, be, whether a court of equity will interfere to give a remedy against the personal assets of a deceased surety, when the remedy at law has been lost by the election of the obligee to take a joint judgment on a joint and several obligation.

The obligation of suretyship arises only from positive contract. This contract is construed strictly both at law and equity, and the liability of the surety cannot be extended by implication beyond the terms of his contract. If he contracts jointly with his principal, it is a legal consequence known to all the parties, that his personal estate will be discharged in case he should die before his principal. Such being the law, it may be considered as a part of the written condition of the bond. And equity will not interfere to extend the liability, as against his estate, on the ground that such discharge arises from the mere technicalities of the law.

So, where a surety enters into a joint and several obligation with his principal, the obligee and all the parties are supposed to be aware of the doctrines of law connected with such securities, and to incorporate them therein, as part of the contract. The obligee knows that this bond will entitle him to either a joint or several judgment, at his election ; he knows also that he cannot have both, that his bond is extinguished by his judgment, or merged in it, as a security of a higher nature, and he knows that, if he elects to take a joint judgment, and neglects to have execution levied in the lifetime of the surety, his personal estate will be discharged at law.

Assuming, as we have a right to do, that these known and established principles of law form a part of the written conditions of the bond, it is not easy to perceive how a chancellor could interpose in the latter case, more than in the former, without disregarding the terms of the contract, and extending the liability of the surety beyond the letter and spirit of his bond.

It is true that, in cases of fraud, accident, or mistake, equity will relieve as well against the surety as the principal. Thus, in case of a lost bond, equity will set it up against a surety, or where a bond has been made joint, instead of joint and several, by mistake of a scrivener ; but it will require a very clear and strong case where a surety is concerned. (3 Russell, 539.) On the contrary, where the parties are joint debtors, and there is no surety in the case, equity will reform the bond, on

the mistake presumed from the fact that both are bound in conscience to pay, and therefore intended to bind themselves severally.

In the present case, we have no allegation of fraud, accident, or mistake. The bill assumes that the legal liability of the surety is gone, by coming into equity for relief, and it shows affirmatively, that the loss of legal recourse to the assets of the surety has resulted from the voluntary election of the obligee to extinguish the several remedy on his bond, without any allegation of mistake or surprise.

" If the obligee of a joint bond by two or more agree with one obligor to release him, and do so, and all the obligors are thereby discharged at law, equity will not afford relief against the legal consequences, although the release was given under a manifest misapprehension of the legal effect of it, in relation to the other obligors." (Hunt v. Rousmaniere's Adm., 1 Peters, 1.)

If equity would not interfere in such a case to revive the legal obligation, even as against the principal debtor thus unwittingly released, it is difficult to perceive on what principle it should interpose to revive an extinguished remedy against a surety who is not bound beyond his legal liability, and who has been discharged therefrom by the voluntary act of the obligee, without any allegation of surprise or misapprehension of the law.

That equity will not hold a surety liable, where he is discharged at law, seems to be well settled both in England and in this country, as a reference to a few of the decisions on this subject will fully show. In Wright v. Russel, 3 Wilson, 530, it is said, " that courts of equity are favorable to sureties, and where they are not strictly bound at law, equity will not bind them." And in Simpson v. Field, 2 Ch. Cas. 22, it was held, " that, where a surety is not bound at law, he will not be made liable in equity." In the case of Waters v. Riley, 2 Harris & Gill, 310, the Court of Appeals of Maryland say, " A surety is bound only by the bond itself, and is not under a moral obligation to pay; equity will not therefore interfere to charge him beyond his legal liability." The same doctrine is established by the Court of Appeals of Virginia, in Harrison v. Field's Ex., 2 Washington, 136, and by the Supreme Court of Pennsylvania, in Weaver v. Shryock, 6 S. & R. 206, and Kennedy v. Carpenter, 2 Wharton, 361.

The only case which asserts a contrary doctrine is that of United States v. Cushman, 2 Sumner, 426.

Although, as a Circuit decision, it is not binding in its authority upon this court, yet, proceeding from so eminent a

judge, it is entitled to high respect.   The case is precisely parallel with the present in all its circumstances, and the positions there assumed have been urged upon the court in this case, as sufficient to entitle the appellant to a decree in his favor.   The opinion of the court in that case, and the argument of the learned counsel for appellant in this, are based on the two following propositions, to neither of which is this court prepared to give its assent.

1st. " That when a party enters into a joint and several obligation, he in effect agrees that he will be liable to a joint and a several action for the debt ; and if so, then a joint judgment can be no bar to a several suit : that by electing a joint suit, the obligee does not waive his right to maintain a several suit ; and that a joint judgment is not *per se* a satisfaction of a joint and several contract."

2d. " That even if the joint judgment could be treated at law as a merger of the several obligations, so far from that constituting a ground in equity to refuse relief against the assets of the deceased party, it furnishes a clear ground for its interference ; for it is against conscience, that a party who has severally agreed to pay the whole debt should, by the mere accident of his own death, deprive the creditor of all remedy against his assets."

1st. The first of these propositions proves too much for the case.   For if the surety is still liable at law, the complainant has made no case for relief in equity.   But the cases cited in support of it, viz. Higgens's case, 6 Coke, 44, and Lechmere *v.* Fletcher, 1 Crompton & Meeson, 623, will not sustain the doctrine stated in this proposition.   They establish this position and nothing more, viz. : — " That, in case of a joint bond, a judgment against one joint contractor would be a bar to an action against another ; but if two are bound jointly and severally, and the obligee has judgment against one of them, he may yet sue the other."   The case of Sheehy *v.* Mandeville, 6 Cranch, 253, in this court, although sometimes criticized and doubted in other courts, goes no farther than to decide, that, where one partner is sued severally on a joint or partnership contract, and judgment obtained against him, it is no bar to a suit against the other, because this contract was not merged in the judgment, and because the first judgment was founded on a several, not a joint, promise.

But these cases give no countenance to the assertion, " that a joint judgment is not *per se* a satisfaction of a joint and several bond."   The law on this subject is too well settled to admit of a doubt, or require the citation of authorities, that, if two

or more are bound jointly and severally, the obligee may elect to sue them jointly or severally. But having once made his election and obtained a joint judgment, his bond is merged in the judgment, *quia transit in rem judicatam.* It is essential to the idea of election that a party cannot have both. One judgment against all or each of the obligors is a satisfaction and extinguishment of the bond. It no longer exists as a security, being superseded, merged, and extinguished in the judgment, which is a security of a higher nature. The creditor has no longer a remedy, either at law or in equity, on his bond, but only on his judgment. The obligor is no longer bound by the bond; but by the judgment, it has become the evidence of his indebtedness, and the measure of his liability.

2d. The second proposition repudiates the doctrine of courts of equity, that, where a surety is not bound at law, he will not be made liable in equity. It does not controvert the well settled principle, that, where the bond is joint only, the personal assets of the surety will be discharged by his death, but asserts that his conscience is affected because his bond was originally both joint and several. But if it is not against conscience that the estate of a surety should be released by his death, when his undertaking was originally joint only, it is hard to apprehend how it becomes so, when the obligee, having a choice of both securities, elects to hold the surety bound jointly, and not severally.

If a surety is under no moral obligation to pay, where he is not legally bound by his contract, his conscience cannot be reached, when the law discharges him from his obligation. The law, as we have before stated, makes a part of every contract; and in case of a joint and several bond, the contract of the parties is, that the estate of the surety shall be discharged by his death, if the obligee elect to hold him jointly, and not severally, liable. So that, in the present case, it is the obligee who is acting against conscience, because he seeks to hold the surety liable, contrary to their contract.

"No case can be found in the books," says a learned author, (Pitman on Principal and Surety, page 92, note,) "where equity has varied the legal effect of the instrument so as to charge the surety." To give a remedy against the estate of a surety after it is discharged at law, and by the election of the obligee, would be varying the legal effect of his contract in a most material point.

The cases cited in support of the second proposition will be found on examination to have no bearing on the point now under consideration. They are too numerous to be severally

noticed. They may all be found collected in 1 Story's Equity, § 162, in note, commencing with Simpson *v.* Vaughan, 1 Atk. 31, and ending with Thorpe *v.* Jackson, 2 Younge & Collyer, 562, and Wilkinson *v.* Henderson, 1 Mylne & Keen, 582. They chiefly refer to cases of partnership, and other joint debtors whose liability at law is joint only; but equity administers relief as against the estate of the deceased partner or joint debtor on account of the moral obligation of each to pay the debt, and because they have received a benefit from the transaction. The doctrine of these cases is clearly stated by Sir William Grant in the case of Sumner *v.* Powell, 2 Merivale, 35. " Where," says he, " the obligation exists only in virtue of the covenant, its extent can be measured only by the words in which it is conceived. A partnership debt has been treated in equity as the several debt of each partner, though at law it is only the joint debt of all. But there all the partners have had a benefit from the money advanced or the credit given, and the obligation of all to pay exists independently of any instrument by which the debt may have been secured ; so, where a joint bond has been in equity considered as several, there has been a credit given to the different persons who have entered into the obligation. It is not the bond that first created the liability."

" It is for this reason," says Mr. Justice Story (Equity Jurisprudence, § 164), " that equity will not reform a joint bond against a mere surety so as to make it several against him, on the presumption of a mistake from the nature of the transaction."

When an obligee takes a joint and several bond, he has nothing to ask of equity ; his remedy is wholly at law. If he elects to take a joint judgment, he voluntarily repudiates the several contract, and is certainly in no better situation than if he had originally taken a joint security only ; equity gives relief, not on the bond, for that is complete at law, but on the moral obligation antecedent to the bond, when the creditor could have had no remedy at law.

An obligee who has a joint and several bond, and elects to treat it as joint, may sometimes act unwisely in so doing, but his want of prudence is no sufficient plea for the interposition of a chancellor. Nor can the conscience of a mere surety be affected, who, having tendered to the obligee his choice of holding him jointly or severally liable, has been released at law by the exercise of such election.

The decree of the Circuit Court is, therefore, affirmed.

Mr. Justice McLEAN and Mr. Justice WOODBURY dissented.

## Mr. Justice WOODBURY.

The leading question in this case is, whether, after the recovery of a joint judgment on a joint and several bond, and the death of one of the obligors happening, who was a surety, a court of equity will sustain a remedy against his property in the hands of his executor.

The safety of the government, having such numerous sureties on official bonds, depends so much on their liability in all proper cases, that the technical discharge of them on objections not reaching the merits is a great and growing evil. The public, too, in the individual dealings of many on the strength of the security furnished by others than the principal debtor, have a deep interest in preventing their discharge without a full satisfaction of the debt.

I must be excused, then, for stating some of the reasons and authorities why it is not in my power to concur in the judgment just pronounced, discharging the executor of the surety to the government, without making any payment whatever of the debt. It is conceded by me, that, in case of a debt entirely joint, if one of the obligors die, it is a rule in a court of law, that "his executor is totally discharged, and the survivor or survivors only chargeable." 2 Howard, 78; 2 Sumner, 368; Bac. Abr., *Obligations,* D. 3; Erwin *v.* Dundas, 4 Howard, 78; 2 Wharton, 361, in Kennedy *v.* Carpenter, and cases cited there; 2 Harr. & Gill, 313; Rogers *v.* Danvers, 1 Mod. 165; 1 Freeman, 127. This, however, is the rule at law, and is not, in all cases, the same in equity. Even at law, the objection is purely technical, and arises only on account of the want of a remedy there against the estate of the deceased, and not because the debt itself has been satisfied; and so strong is the justice of still enforcing it at law without a resort to equity, that the statutes of many States have expressly made provision for collecting a debt against the estate of all joint debtors when it has never yet been paid by either. See United States *v.* Cushman, 2 Sumner, 312, and 2 Gill & Johns. 316. But in time, without any statute, courts of chancery gave relief in this class of joint contracts by allowing a remedy in certain instances; and though this was at first refused (2 Brown, Ch. 276), and was granted at last with some hesitancy, it has become the ordinary practice to allow it, when the original indebtedness or liability, though now in form joint, was on any account, or in any just view, general no less than joint.

Indeed, without relying on this distinction, the Lord Chancellor in Primrose v. Bromley, 1 Atkyns, 90, states a case where he decreed such relief, to a certain extent, on a joint bond against the estate of the deceased. He observes, — "There was a case which I determined in this court, where there were two persons jointly bound in a bond, one of the obligors died; and to be sure, at law, it might have been put in suit against the survivor, but as I thought it extremely hard, I decreed the representative of the co-obligor should be charged *pari passu* with the surviving obligor in the payment of the bond."

But it seems uniform to grant such relief by a new remedy in chancery against the estate of the deceased, whenever, as here, the original contract was several as well as joint. Towers v. Moor, 2 Vern. 99; 1 Peters, 16, and cases *post;* Rogers v. Danvers, 1 Mod. 165; Burr. 1190; Williams on Executors, 809, 811; 1 Freeman, 127. I doubt whether a single case to the contrary exists in either the American or the English books.

One ground of relief, where the original contract was several no less than joint, is the admission in the undertaking, that each signer and his estate should be separately liable for the whole to the obligee, so far as regards him, and hence raising in equity a liability to do this separately by his property after death, because the difficulty in any remedy to enforce it at law is merely technical, and the equity or conscience in paying an unsatisfied promise and debt stands still unimpaired. See further cases. United States v. Cushman, 2 Sumner, 427; 1 Merivale, 563; Sumner v. Powell, 2 Merivale, 30; Devaynes v. Noble, 2 Russ. & Mylne, 506. The chief difficulty in this class of cases is to settle whether the contract was several as well as joint. It is the language of the contract, when several, which is the most decisive test as to its severalty. Sir Wm. Grant says, "When the obligation exists only by virtue of the covenant, its extent can be measured only by the words in which it is conceived." 2 Meriv. 36. A similar reliance on the words used being joint only, and not several, appears in Harrison v. Field, 2 Wash. 141.

The court observes, too, in Sumner v. Powell, 1 Turner & Russell, 425, "There can be no doubt in the world, that, if this covenant had been a joint and several covenant, it would have done, and therefore any evil which might otherwise arise out of the case may be avoided by the addition of a single word." In Towers v. Moor, 2 Vernon, 99, it is said, "Where two are jointly bound and one dies, you must sue the survivor, and

cannot maintain an action against the executor or administrator of him that is dead; but if bound jointly and severally, it is otherwise."

So in Lechmere *v.* Fletcher, 1 Crompton & Meeson, 629, there had been a contract wholly joint, and a judgment on it jointly; but one of the promisors made also a several agreement to pay the amount, not as a substitute, but as an additional undertaking; and a remedy in equity against the representative of this last promisor was sustained on that separate agreement.

But without pursuing this point further, it is placed beyond doubt, by the numerous cases hereafter cited, that courts of equity will give relief, though the contract produced is on its face joint, if it be proved that it was originally agreed to be joint and several, and by mistake or ignorance was written joint alone. It becomes necessary, then, to consider next the only pretence urged for taking this case out of the general rule, namely, that a joint judgment had been subsequently recovered here against all the obligors, and that the deceased was a surety.

1st. It has been much pressed here that the remedy in this case is now at law only on the joint judgment, and hence should not be enforced severally in equity. But it is conceded that the original liability was joint and several; and it is laid down in some books, that a several action at law could probably have been sustained here on the original demand, after the joint judgment.

It has been adjudged by this court, that on a joint and several promissory note an action and judgment against the signers severally are no bar to a joint action against them. Sheehy *v.* Mandeville, 6 Cranch, 253; 6 Coke, 44; 13 Mass. 148. And though a joint suit on a joint and several promise is a bar to another joint action on it, (Higgens's case, 6 Coke, 45; Gilman *v.* Rives, 10 Pet. 298,) it is thought by Judge Story, after much deliberation and research, to be no bar to a several suit and judgment afterwards on the original joint and several promise. U. States *v.* Cushman, 2 Sumner, 312, *semb.*, and 427; 1 Story's Eq. Jur. § 164 and note, and § 676; 7 Serg. & Rawle, 355; Lechmere *v.* Fletcher, 1 Crompt. & Mees. 623. *Sed* cited *contra*, 13 Serg. & Rawle, 288; 2 Watts, 204; 7 Serg. & Rawle, 354; 2 Serg. & Rawle, 280; 9 Watts & Serg. 88; U. States *v.* Thompson, 1 Gilpin, 622; 1 Peters. 16; 2 Wash. 136.

On an examination of the opposing cases which have been cited, it will be seen that the weight of authority is

The United States v. Price.

against the technical merger or bar set up here by the joint judgment.

The case cited from Gilpin against this is one at law; and the point in controversy was merely the validity of a release to one co-obligor, after a judgment against another, to discharge the latter also.

The case of Williams et al. v. McFall, 2 Serg. & R. 280 – 282, is only sustaining a judgment separately against one co-obligor, who confessed it.

The case in 1 Peters, 16, merely held one obligee to abide by the selection he had made of one kind of security over another, given by a single obligor.

The case in 2 Washington, 136, was one of a joint contract originally, no less than afterwards.

The case of Reed v. Garvin's Executors, 7 Serg. & R. 354, held, to be sure, that one joint judgment was a bar to another at law against the executors of one of the obligors deceased. Yet, at the same time, it maintained that a remedy existed against the real property, if not the personal, of the deceased, and at law, in Pennsylvania, wherever it existed in England in chancery (pp. 356, 357, 365). Duncan, J., at this last page, says, what strongly applies here, though after a joint judgment on the bond against all the obligors, — "That in some way the defendants, the executors of the deceased obligor, should be reached, or the lands of the testator, which are assets in his hands," and charged with the payment of judgment debts, " we all agree, though we differ in the mode."

The case of Downey v. The Farmers and Mechanics' Bank, 13 Serg. & R. 288, is the only case cited which holds that after an action at law against two co-obligors, though judgment be obtained only against one, another suit separately will not lie against the other. But this was deemed by the court as illiberal and technical in principle, and applied only to another proceeding at law against one.

There is another case — Ex parte Rowlandson, 3 P. Wms. 406 — which has not been cited, but holds, as a collateral point or illustration, that a suit against all obligors instituted on a joint and several contract at law may, while pending, be pleaded in abatement to a several suit on the same contract, and vice versâ. No decided case of this kind is cited, however, and this is not in all respects in point.

Nor is it in point that a joint judgment against two, apparently on a promise wholly joint, is a bar to a subsequent action at law against one of them, without averring the death or discharge of the other, (see Gilman v. Rives, 10 Pet. 298,) because the present promise was not joint alone.

In no instance in this class of cases has it ever been held necessary, in order to sustain this proceeding in equity, that a judgment on the original indebtedness should be severally recovered first.    See *post*.    1 Meriv. 539.    Or that, if joint, it should be still open to a several remedy at law.

.    Thus stands this point on the precedents.    It will be apparent, therefore, that when this is a mere technical objection as to a remedy, and not any defence against the debt as still due, and is a very doubtful one at law on the present facts, it ought not to prevail a moment in a court of equity.

It is not to be overlooked that our present inquiries are not at law, but wholly in equity, and are to be governed by equitable, and not strict legal or technical considerations.    If, then, the joint judgment had been more clearly a technical merger of the joint and several debt here, and no several action would afterwards lie at law on the note, would it not be just and right on principle to grant this separate aid in chancery ?    So strong is this principle, we have already seen, that sometimes it is provided by express legislation that at law a suit may still be prosecuted against the surviving debtor and the executor of the deceased debtor together on a joint obligation, or, if existing in a judgment, be enforced against the property of either.    (See Sumner, and Harris & Gill, before cited.)    The justice of such a remedy, the debt against both being conceded still to exist unpaid, seems to be so apparent, as to commend its sanction and success in a court of equity without the aid of any statutory provision.    1 Story's Eq. Jur. § 164.

One reason why the assets in the hands of the executor are charged in any of these cases is, that he is a trustee for all which can equitably be charged on them.    2 Williams on Executors, 1584.    But was not the estate of the deceased charged equitably with a joint judgment against him on a joint and several promise, as fully as by that promise without any judgment ?

One prominent reason assigned against this relief here, under all the circumstances of the case, has been, that, by the joint judgment, there has been a release or *quasi* release of each obligor.    But this cannot mean a release of the debt, or the joint judgment itself could not be enforced at all in any way, nor against either.    So far from the debt itself being released, it is fixed and proved by a solemn record.    Notwithstanding, too, the subsequent death of one, the debt still stands.    He has never paid it, and his property, in every conscientious view, should also stand as liable as ever to discharge it, the obstacle at law reaching merely the remedy.

The obligation on the estate to pay *in foro conscientiæ* being

strong as ever, the moral duty on the representative of the deceased is still imperative, and is more to be weighed and enforced in chancery than elsewhere, that being the tribunal peculiarly designed to relieve against much of the strictness and technicality prevailing elsewhere.

It has been urged, further, that, if the liability is enforced here in chancery, it will be without any equity existing between the obligors. But that is not the question; it is, whether there was not an equity between the obligors and the obligee, — one growing out of an absolute promise, an ample consideration both implied and hereafter shown, and in this case a judgment recovered. An executor is charged sometimes where a judgment has been recovered against the deceased, when he would not be if there had been no such judgment, as the cause of action at times does not survive. Whiteacres v. Onsley, Dyer, 322, a; 2 Williams on Executors, 1366.

Again, it is urged that, the joint judgment being a merger of the joint and several contract, and a several remedy at law afterwards not allowed, there is no ground in equity, because none at law exists to charge the several estate of one deceased. But this proves too much. The principle in all these cases is not to discharge on in equity, if not liable to a suit severally at law, but almost the reverse; because in all cases, except where the contract on its face and in terms was several, no several suit at law can be maintained. But still a proceeding is frequently sustained in equity, and the circumstance of there being no relief at law is one reason for rather than against it. Thus is it with a partnership debt, a common joint debt on a joint loan and bond, and a joint contract or bond not reformed, but which should have been written several. In none of these could a several suit at law lie when the co-obligor died, and yet in all a court of chancery will relieve. Those in each class have been or will hereafter be explained, and need not be repeated.

Again, on equitable grounds, it seems obvious that after a joint judgment against joint and several obligors, which binds still the person and property of either as much as if the judgment had been several, the property of each should continue liable as much as if the contract had been never sued, or had been sued severally. And a fortiori should this be the case in equity, where judgments form a lien on the property of all the respondents, and a joint judgment, as here, bound the estate of the deceased co-obligor. I am not aware of any case like this, even if it had been entirely joint in form, that equity would not pursue such a lien against all.

9 *

Again, supposing that a several action would not lie here on the bond against one co-obligor after a joint judgment, though the promise was joint *and* several, rather than joint *or* several, or joint alone, it is far from decisive against this application in equity.    There the court often looks to the circumstance whether the *original* contract of indebtedness was joint alone, or joint and several, and if the latter will aid a recovery.

So paramount is this test, that where the written contract reads·joint only, equity will on request reform it, if it was originally agreed to be several, and by·mistake or fraud was not so written ; and after. reforming it, chancery will enforce it against the estate of one co-obligor deceased, as it was supposed to stand originally.    1 Story's Eq. Jur. § 164.

Other cases seem to imply that an original indebtedness, though the bond be only joint, and no evidence offered of an agreement that it. should be  several also, will be regarded as several, and enforced accordingly, if it was for an ordinary loan, where all are partners or where all were benefited.    See *post;* 1 Story's Eq. Jur. §§ 162, 676; 2 Russ. 196 ; 2 Meriv. 36.

*A fortiori* will relief, then, be proper, if it was, as here, originally written several, or even if it was agreed to be so.    2 Ves. sen. 101, 106 ; Ex parte Symonds, 1 Cox, Ch. 200.    Indeed, the justice of this has seemed so strong, that some legislatures, as in Maryland, have gone so far as expressly to enact that the same remedies shall be sustained on joint bonds against estates of one deceased, as on those joint and several.    See Act of 1811, ch. 161, in 2 Gill & Johns. 316; 7 Harr. & Johns. 466.

That I am right as to the practice in equity to look to the original contract, and not merely the face of the present debt, may be seen in the cases of partners and of ordinary joint contracts, where it is allowed to be· proved that originally, in their essence, though not in form, they were several no less than joint, and after that to grant relief.    See the illustration in Hunt *v.* Rousmaniere's Adm., 1 Peters, 16, and cases hereafter cited.

It is a peculiar excellence in chancery, on many occasions, that it goes behind writings, and even sealed instruments and judgments, to ascertain how the original transaction stood, and what were its true obligations, in order to enforce them. The joint judgment here did not create the original liability to pay, and hence·equity can as properly go back of it to see what the original liability was, and if several no less than joint ; as it, goes back of a joint bond when "it was not the bond

which first created the liability to pay." 2 Williams on Executors, 1370.

However, then, it may be at law as to the several liability of a joint and several contractor, after a joint judgment has been recovered, it seems that the principle and precedents in equity do not rest on that, but hold tɪ ɛ estate of one after his death responsible, if the original obligation was several as well as joint. Here the promise and duties were at first not only several, and have never been satisfied, and, except technically at law in respect to the remedy, have never been extinguished; but to the original equities have been superadded a lien on his estate, by the joint judgment recovered before his death, and which it is equitable to have enforced after his death, on this no less than several other occasions.

There are two classes of cases which go to sustain further this view, where the contract is on its face joint, and not in form several as well as joint, and is not proved to have been originally agreed to be written several as well as joint; and yet where relief can be had, looking to the original severalty of the transaction, rather than to the mere technical law on it as now standing. One is where the obligors acted as partners in business, and there, though the promise is in form only joint, a court of equity will charge the estate of the deceased partner in a bill against the executor or administrator. 1 Story's Eq. Jur. §§ 676, 163; Thomas's case, 3 Ves. 399; 1 Meriv. 539; Devaynes *v.* Noble, 2 Russ. & Mylne, 495, 506; Bishop *v.* Church, 2 Ves. sen. 101, 371. This is also said to proceed on general principles of equity rather than on the *lex mercatoria.* 1 Meriv. 539, 562; 2 Younge & Col. 562. It goes back for a test to the original consideration and relation of the parties. So fully, however, even there, is the relief granted on the ground or theory of a several obligation or duty originally, though not so expressed in the writing, that the Master of the Rolls declares, in Henderson *v.* Wilkinson (1 Mylne & Keen, 588), — "All the authorities establish, that, in the consideration of a court of equity, a partnership debt is several as well as joint."

The other class is, that in a joint loan or other transaction, if the obligation taken be in terms joint only, and not agreed in the writing or otherwise to be several, equity will still enforce it in many cases against the estate of either alone. 2 Meriv. 37; Thompson *v.* Jackson, 2 Younge & Col. 553; Cowell *v.* Sikes, 2 Russ. 196; Ex parte Kendall, 17 Ves. 525, note; Waters *v.* Riley, 2 Har. & Gill, 310 – 313; 6 Serg. & R. 266; Primrose *v.* Bromley, 1 Atk. 89; Kennedy *v.* Carpenter, 2

Whart. 364, 365; 1 Mylne & Keen, 582; Simpson *v.* Vaughan, 2 Atk. 32; Bishop *v.* Church, 2 Ves. sen. 101. Here, also, the idea of a several obligation originally is still looked to, and is sought outside of or behind the joint instrument, by examining the transaction as it took place at first.

Some rest the remedy here on the presumed receipt originally by each of a part of the loan or benefit; and others on the legal presumption, not the proved fact, that the contract itself was by mistake originally not written several as well as joint, and thus reforming it and deciding on it as if reformed and made several. See cases before cited, and Hunt *v.* Rousmaniere's Adm., 1 Peters, 16. And others put it on the probable legal *intent*, that all should be severally held responsible. 6 Serg. & Rawle, 261; 9 Ves. 118. And this intent is the presumption in all mercantile transactions, — more obviously from usage there, — but is not confined to them. 1 Russ. 191; 2 Younge & Col. 562; Rawstone *v.* Parr, 3 Russ. 427; Ex parte Kendall, 17 Ves. 528, note. So strong is this equity regarded against the estate of one deceased, in either of these classes, that chancery will allow it to be pursued without a resort first to the survivor. Wilkinson *v.* Henderson, 1 Mylne & Keen, 588; Sleech's case, 1 Meriv. 539, and 3 Meriv. 593.

The reliance just referred to, on legal presumptions and probable intents originally, in order to find an original severalty in the case to help furnish or justify a remedy in equity, discloses another and the last ground I shall consider in favor of such a remedy here. It is this.

If such presumptions will be made in point of law, as to the intent, and an error in the writing, so as to raise a several engagement originally, to charge the estate of one deceased, the reason for them here is much stronger, as here the original contract was expressed on its face to be several. We are not compelled to resort to mere constructions and inferences to show it to be several. And if equity will in these cases overcome the technical objection at law which prevents a proceeding there against the estate of one deceased obligor, when the contract is on its face joint, so may it equally well overcome the technical objection at law, when the judgment is on its face joint.

Indeed, as before suggested, the equities in favor of this redress in all cases of joint contracts, and independent of statutory provision, are nearly as strong as in those joint and several, — and quite as strong in case of joint judgments, as these last generally constitute an actual lien on the estate of each obligor.

2d. No ground remains for claiming an exemption of the estate of Archer from this liability in equity, unless it be that he was a *surety* in the bond. But if a surety promise severally as well as jointly, he seems as liable in equity on account of that written and express promise as a principal would be. And it is on that several promise he is here chargeable in the first instance.

If it was necessary to show some original consideration, in connection with the surety in such matters, the signers of a joint and several bond are as to the obligee usually to be regarded as all principals. 2 Sumner, 427; 6 Johns. Ch. 309; Boddam's case, 9 Ves. 465; 1 Story's Eq. Jur. § 496.

It has been adjudged by this court, that the consideration to charge the principal is good to charge the surety. Thus, in The United States *v.* Linn et al., 15 Peters, 290, it is said, — "If Linn received a sufficient consideration to uphold the promise on his part, it was sufficient to bind the sureties. There was no necessity for any consideration passing directly between the plaintiffs and the sureties. It was one entire and original transaction, and the consideration which supported the contract of Linn supported that of his sureties." (p. 314.)

Beside this, unless the obligee injures them by a new stipulation for further delay with the principal, which is not attempted to be proved here, and when here the delay benefited the surety alone, the principal being insolvent, then it will be seen that other good reasons usually exist for him to consider them as principals, and as promising for a good and valuable consideration to pay the sum named in the bond, and thus to raise a strong equity against them. Such a consideration, when they are liable by a sealed instrument, is in law always presumed or implied. 6 Johns. Ch. 302; 1 Vernon, 427; 1 Ves. sen. 514; 15 Peters, 291.

It is the usage, also, for sureties to be previously indemnified by a pledge of actual property of some kind, or to receive in money in advance two or more per cent. for their guarantee. It is to be recollected, also, that here the imported goods were, in consequence of their promise, allowed to be sold in this country by the owner with no other payment of duties, and thus a most important pecuniary benefit conferred on their friend for their promise as sureties.

One of Lord Bacon's proposed improvements in chancery was to treat sureties as justice and the law required, and their own conduct warranted; they, being anxious to obtain favors for friends or themselves by their promises, should therefore be made equally anxious to fulfil those promises. See 6

Johns. Ch. 309, a like view. The surety is also often the most responsible signer, and without whom the credit would not generally have been given.

An idea seems to have been entertained here, that chancery will do nothing to charge a surety which cannot be done at law, or when he is technically exonerated at law. But this is an error. It will often extend like relief against them as fully as against principals. Thus, passing by the cases, that a surety will still be made liable in equity though the bond is lost, as this may be done at law, (Skip *v.* Huey et al., 3 Atk. 93; 6 Johns. Ch. 307; 1 Ch. Cases, 77; Boddam's case, 9 Ves. 464; Equity Cases Abr. 93; 2 Wash. Rep. 140,) yet, in chancery, a contract will be reformed against a surety as well as a principal, where it is proved clearly that his name was by mistake omitted in the body of the instrument, though this will not be done at law. (Crosby *v.* Middleton, Prec. in Ch. 309.) So where, by mistake, the bond runs to a wrong person. (Wiser *v.* Blachly, 1 Johns. Ch. 607.) There are several cases, too, where in equity, but not at law, a bond only joint on its face will be reformed against a surety, and made several also, if it was proved to be originally agreed to be several. 1 Story's Equity, § 164, and cases there: see cases before cited, and 3 Russell, 424, 539; Weaver *v.* Shryock, 6 Serg. & R. 262-265. And to go to the full extent of the present case, it has been deliberately settled, that relief in equity to charge the estate of a deceased surety will be given as fully as against the principal, when the bond is on its face expressed to be joint and several. 6 Johns. Ch. 309; Rawstone *v.* Parr, 3 Russell, 427 and 539, *semb.*; Wiser *v.* Blachly, 1 Johns. Ch. 609; Prec. in Ch. 309; United States *v.* Cushman, 2 Sumner, 427.

In this class of cases, also, the relief is made to rest on the express form of the bond or contract being several as well as joint, and not on any joint benefit or partnership.

These last are distinct and different grounds to charge either principals or sureties, when contracts are on the face of them joint. See Pitman, Prin. and Sur. 91, note 1. So in Rawstone *v.* Parr, 3 Russell, 427, and 539, S. C., it was held that, though the present contract appeared to be only joint, if it was agreed originally to be joint and several, as it was in truth here, a court of equity would aid a recovery against the executor even of a surety. Prec. in Ch. 309; 1 Story's Equity, § 164; 1 Johns. Ch. 609. *Sed* cited *contra*, Waters *v.* Riley, 2 Harris & Gill, 310; 6 Serg. & Rawle, 246, *semb.*; Kennedy *v.* Carpenter, 2 Wharton, 361. But, as already shown,

these last were all cases of joint contracts, and not agreed to be several also; and cases where, likewise, no consideration was supposed to exist affecting the surety.

In 6 Serg. & Rawle, 266, the court admit that cases may exist where the estate of a co-surety may be charged, and one of them is where it was originally agreed the bond should be several (p. 264). We have already cited a number of others to that effect, and consider this an authority for our proposition.

The case of Harrison's Executors *v.* Field's Executors, 2 Wash. 136, is often cited against the position I have taken. But it was confessedly a joint bond, and there was no evidence of an original agreement to have it several (p. 138). And Judge Roane (p. 139) makes the same admission, that cases may exist where the estate of a co-surety is liable.

All the doctrines in Pitman on Principal and Surety, 90 and 91, supposed to differ from this position, are cases where the written contract is joint, and not joint and several.

Obscurity arises in some of the cases amidst these distinctions, from their subtilty and variety, and this tends to mislead unless cautious discrimination is made. This, and the collision between a few of the cases in the books, sometimes spring from the circumstance of not adverting to the ground, that all the signers are principals as to the obligee; and that sureties are as to him to be made liable, as if principals. See this error in Waters *v.* Riley, 2 Harris & Gill, 310. And from not discriminating between cases where the written obligation was only joint, and where it was both joint and several. 3 Russell, 541. So, from not observing that the surety is estopped as to the receipt of a consideration in a sealed instrument, and more especially, as here, after a judgment against him and the principal.

Another cause of some confusion and mistake in some of the cases is the treating of them as if still at law, and on strict legal principles, rather than in equity and on equitable grounds.

It is another source of error that several cases rest on more than one ground. Thus, in Primrose *v.* Bromley, 1 Atk. 90, the obligation was several as well as joint, and a benefit or consideration extending to the co-obligor deceased. So in Simpson *v.* Vaughan's Executors, 2 Atk. 33, the court first reformed the contract, being a mercantile loan, so as to regard it as several no less than joint, and a full consideration to the deceased was apparent.

Here one ground exists, which is sufficient alone, namely, a written obligation several as well as joint; though, were it necessary to show a consideration also, reaching the surety,

enough to raise a legal and strong presumption of one is not difficult to be pointed out, as before done, and explained.

In conclusion it may be useful, as a test of the real equity of the principle adopted by the court in this case, to examine for a moment and discriminate what is its character or extent. It is this. An original obligation, joint and several, after the death of one obligor, who was a surety, may equitably be enforced against his estate, if not sued at all, but cannot be equitably enforced against it if sued jointly, and the liability of all rendered more certain, and a lien against the estates of all fixed by the judgment recovered.

Again, if an obligee sues each obligor separately, on a joint and several bond, before the death of either, it holds him entitled to relief against the estate of the deceased; but if he sues all together, he is not equitably to be relieved. In both cases, the original contract was the same in form and substance, the consideration the same, the liens the same; and as to the deceased, the same in amount after, as well as before, judgment; and in both cases the debt itself is still unpaid and still unreleased, and no remedy open at law against the estate. Yet it seems, in an equitable view, — in a court whose duty and business it is generally to adopt an enlarged, liberal, and just policy, and to aid against the strictness and technicalities of law, — one of these cases is to be deemed entitled to its beneficent interference, but the other is not.

Again, as a consequence of this doctrine, all joint obligors will of course hereafter be burdened with much increased cost, instead of being aided by any principle in their favor really settled by the court in this judgment. Because all the ameliorating principle settled here is, that, if each obligee is sued severally on a joint and several obligation, the obligor is entitled to the aid of a court of equity against the estate of one deceased; but if he brings only one action, and makes but one bill of cost against all of them, he behaves so as to be entitled to no equitable relief. Certainly this looks like a new attitude or version of what in a court of equity should be considered equitable; and it is likely to prove much more beneficial to the profession, than to the parties concerned or the public. Whatever technical differences as to remedies may be created at law by the forms of judgments, it will be difficult in equity, and applying equitable principles, as in the present case, to discriminate against the present case on the merits and on grounds of substantial justice.

The plaintiffs, therefore, seem to me entitled to recover, out of the estate of the deceased, the balance which is due.

*Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed.